# Stone *v.* The State.

*Indictment for Burglary.*

1. *Sufficiency of indictment, in description of building broken and entered.*—An indictment which charges that the accused broke and entered "a gin-house, the property of W. R., in which was kept, for use, sale, or deposit, seed-cotton, a thing of value," &c., is sufficient, without an additional averment that the gin-house was specially constructed for the use to which it was applied. Under the statute (Code, § 4343), only structures of a temporary character, erected for special purposes or occasions, require such additional descriptive averment.

2. *Burglary; breaking and entering.*—The two rooms of a gin-house, which

[Stone v. The State.]

had not been used as such for two years or more, being separated by a parti-
tion in which an opening was left, not for ingress or egress, but for the pas-
sage of the cotton from the gin (when running) into the lint-room; and being
used and occupied by two different persons, each having the key to the door of
his own room; if one of them enters the room of the other, through the said
opening, with the intent to steal his seed-cotton stored therein, he is not guilty
of burglary, though he opened and entered the door of his own room, with
the intent to pass through the opening and steal the cotton in the other room,
and carried his intent into execution.

FROM the Circuit Court of Talladega.

Tried before the Hon. JOHN HENDERSON.

The defendant was indicted under the statute against
burglary, which is in the following words : " Any person
who, either in the night or day time, with intent to steal, or
to commit a felony, breaks into and enters a dwelling-house,
or any building, structure, or inclosure within the curtilage
of a dwelling-house, though not forming a part thereof ; or
into any shop, store, ware-house, or other building, structure,
or inclosure in which any goods, merchandise, or other val-
uable thing is kept, for use, sale, or deposit, provided such
structure or inclosure, other than a shop, store, ware-house,
or building, is specially constructed or made to keep such
goods, merchandise, or other valuable thing, is guilty of
burglary," &c. The indictment charged, in a single count,
that the defendant "broke into and entered the gin-house of
William R. Stone, in which was kept, for use, sale, or de-
posit, seed-cotton, a thing of value, the property of William
Roberson, with the intent to steal; against the peace," &c.
The defendant demurred to the indictment, but the record
does not show what causes of demurrer, if any, were
specially assigned. The court overruled the demurrer, and
the defendant then pleaded not guilty ; on which plea issue
was joined, and a trial had.

On the trial, as appears from the bill of exceptions, the
State introduced William Stone as a witness, who was the
owner of the gin-house alleged to have been broken and
entered, and who thus described it : "It was an old-fash-
ioned gin-house, set up on props some feet from the ground,
with two rooms to it ; one of which had formerly been used
as a lint-room, and the other as a gin-room. At the time of
the alleged breaking, one of the rooms (the lint-room), which
was a long, narrow room, was in the possession, and under
the control of William Robinson (?) a tenant on the place of
witness, who used the same for the purpose of storing his
(Robinson's) cotton therein. This room had a window in
one end, fastened on the inside with a wooden pin ; and it
also had a door at one side, which was kept locked, and
William Robinson carried the key. At the time of the

alleged breaking, said Robinson had a considerable quantity of seed-cotton stored in the end of the room opposite from the end containing the window. It was piled up in a regular and orderly way. At the time of the alleged breaking, Robinson was using said room as a cotton-room. ·Witness had not himself used the gin-house for several years prior to that time. The other room, which had formerly been used as a gin-room, was opposite to the lint-room, and separated from it by a partition, making each a separate and distinct apartment. This room also had a door opening out into the gin-house lot. It was in the possession, and under the control of defendant, who was also a tenant on witness' place, and who used the same for the purpose of storing his cotton therein. At the time of the alleged breaking, defendant was using this room as a cotton-house, had cotton stored therein, and carried the key to the door opening into said room. The partition between the two rooms was a solid one, with no door or window therein; but there was a hole in it, large enough for a man to crawl through, which was made in the partition wall for the purpose of permitting the cotton to pass from the gin, when it was used for that purpose, down into the lint-room."

William Robinson, as a witness for the State, testified to the loss or larceny of his cotton from the lint-room, and de-scribed the appearance and condition of the room when he examined it, in November, 1876, a day or two after the larceny; the appearances indicating that the cotton had been carried to the window and through it, where it was put into a wagon, which was then driven off; and in these particulars his testimony was corroborated by the former witness (William Stone), who was with him at the time. "Said Robinson testified, that he kept the window fastened from the inside with a wooden pin, and also kept the door locked, and carried the key himself; that the last time he left his cotton-house, before he missed any cotton, he fastened the window securely on the inside, and locked the door as usual; that when next he saw it, and missed the cotton, he found the door locked as usual, but, on closer investigation, found that the wooden pin holding the window had been removed, and the window was unfastened; that there was a hole in the partition between his cotton-house and the defendant's, large enough for a man to crawl through easily; that the defendant carried the key to his own cotton-house, which had a door opening into the lot." This witness also stated facts strongly tending to show that the defendant was the person who had entered the room by night and carried off the cotton; and in these facts he was corroborated by the testimony

[Stone v. The State.]

of other witnesses. The only evidence offered by the defendant tended to prove an *alibi*.

"The above being all the evidence in the case, the court charged the jury, *ex mero motu*, as follows : 'If the jury believe, from the evidence, that the defendant had the possession and control of the cotton-house adjoining that of Robinson, and entered his own cotton-house, by means of a key which he carried, with the intent to steal, and then crawled through the hole in the partition between the two houses, and, after being in Robinson's cotton-house, opened the window from the inside, and stole and carried away Robinson's cotton ; then the law would consider the unlocking and entering through his own door a sufficient breaking to constitute a burglary, if the other elements of the offense are made out to the satisfaction of the jury beyond all reasonable doubt.' To this charge, and to each separate part thereof, the defendant excepted"; and he then requested the court to instruct the jury, in effect, that if the defendant had control of the room adjoining Robinson's, and entered Robinson's room through the hole in the partition, and opened the window of this room from the inside, and carried away the cotton through the window, this was not such a breaking as would constitute burglary. The court refused to give this charge, and the defendant excepted to its refusal.

BOWDON & KNOX, for the defendant.—1. A gin-house is not *ejusdem generis* with shop, store, or warehouse ; and hence, to constitute the offense denounced by the statute, it must, by proper averment, be brought within the terms of the proviso.—Code, § 4343; *State v. Raiford*, 7 Porter, 101 ; *Johnson v. State,* 32 Ala. 583.

2. There was a fatal variance between the averment and proof, as to the ownership of the building, or room, said to have been broken and entered. The ownership should have been laid in Robinson.—2 Russell on Crimes, 3d Amer. ed., 30 ; 2 Wharton's Crim. Law, §§ 1586-7 ; 2 East, P. C. § 500 ; *Webb v. State*, 52 Ala. 422.

3. The court erred in the charge given, and in the refusal of the charge asked. The defendant was not guilty of any offense in opening the door and entering his own room ; and if he afterwards entered Robinson's room, through the hole in the partition, though with the intent to steal his cotton, this was not a breaking in law, and he was not guilty of burglary.—4 Bla. Com. 226 ; 2 Russell on Crimes, 2-3, 27, 31 ; 1 Hale's P. C. § 554 ; 2 East's P. C. c. 15, p. 506 ; 2 Bishop's Crim. Law, §§ 109-11 ; 2 Wharton's Crim. Law, § 1591.

H. C. TOMPKINS, Attorney-General, for the State.—1. A gin-house is a "building" within the words of the statute, and is not a "structure or inclosure" within the terms of the proviso.   Hence, no additional descriptive averment of it was necessary in the indictment.

2. The aperture in the partition wall between the two rooms was necessary for the purposes for which the building was erected; without it the building could not be conveniently used as a gin-house.   It was as necessary as a chimney in any other house; and an entry through it, with intent to steal, was in law a breaking.—*State v. Willis*, 7 Jones, N. C. 190; Clark's Manual, §§ 839–41, and cases cited.

MANNING, J.—A gin-house is not one of those *structures or inclosures, "other than* a shop, store, warehouse, or *building,"* which may be the subject of burglary, according to section 4343 of the Code of 1876, only when "specially constructed or made to keep such goods, merchandise, or other valuable thing," as must be contained therein at the time of being broken into with a larcenous or felonious intent.   A gin-house is an edifice which, like a barn, is of a permanent and substantial kind, and is well known in communities where cotton is grown, as the building to which seed-cotton is carried from the field, and where the seeds are separated by the machine called a gin, from the lint, or wool.   It was, therefore, not necessary it should be described in the indictment as "specially constructed or made," for the use to which it was put.   The *structures* that must be thus described, are those of a temporary character, erected for special purposes or occasions.   The demurrer to the indictment was, therefore, properly overruled.

2. The two rooms of the gin-house, which was no longer used for the ginning of cotton, were externally accessible through separate doors; and in the partition between them, there was no opening intended to be used for ingress and egress.   But the hole in it, through which the lint-cotton as expelled from the gin, when that should be in operation, was intended to pass, was large enough to permit a man to crawl through.   No such breaking as is requisite to constitute burglary was, therefore, committed in a man's passing through this hole from the gin-room, which was in the lawful control of Robinson, and of which he had the door-key. It could not be regarded like the case of an entering by a chimney, because a gin had not been used in the building for two or more years, and the two rooms were now put to separate uses, and in charge of different persons.

Nor was defendant guilty of burglary—house-breaking—

[Ashworth v. The State.]

by opening the door of the room of which he had the key and lawful use, and entering therein, though he did so with the intent to pass through the hole mentioned, and did pass through it, into Robinson's room, and steal thence his cotton. He could not commit the offense of house-breaking, by entering the part of the house of which he had the use and control, though he did so to enable him the better to commit a larceny of the property of another person. It is for the larceny he should, in such a case, be indicted.

Let the judgment of the Circuit Court be reversed, and the cause remanded. The defendant must remain in custody, until discharged by due course of law.

