## Jim Bird v. The State.

### No. 3361.  Decided December 13, 1905.

**1.—Burglary—Charge of Court—Fraudulent Intent.**

On a trial for burglary, where there was evidence that defendant had been requested by another to enter the house for the purpose of sleeping therein and without fraudulent intent, or of going into said house to get quilts or bedding to sleep thereon, it was error for the court to so frame his charge as to throw the burden upon defendant and require of him to show affirmatively that he went into said house for the sole purpose of sleeping therein, or getting quilts to do so. The State must prove beyond a reasonable doubt that the defendant entered said house with the fraudulent intent of committing theft, or else he was not guilty.

**2.—Same—Want of Consent—Owner's Consent.**

On a trial for burglary, where the evidence tended to show that a day before the alleged offense the owner of the house entered into a scheme with others that defendant should go into said house, the court should have charged on the question of consent by the owner, and to find defendant not guilty if such consent was given, and the owner was connected with the original design of such scheme.

Appeal from the Criminal District Court of Harris.  Tried below before Hon. J. K. P. Gillaspie.

Appeal from a conviction of burglary of a house in the night time; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Reynolds & Barkley,* for appellant.—The following authorities amply support the proposition that the charge given is erroneous and that defendant's rights are materially affected thereby: Shamberger v. State, 24 Texas Crim. App., 433; Johnson v. State, 29 Texas Crim. App., 150; Johnson v. State, 30 Texas Crim. App., 419; Moore v. State, 28 Texas Crim. App., 377; Bayne v. State, 15 S. W. Rep., 404; Harvick v. State, 18 S. W. Rep., 677; Stanfield v. State, 62 S. W. Rep., 917; Cogdell v. State, 63 S. W. Rep., 645; Giles v. State, 71 S. W. Rep., 961; Bennett v. State, 75 S. W. Rep., 314; Vann v. State, 77 S. W. Rep., 813; Landers v. State, 63 S. W. Rep., 557; Edens v. State, 55 S. W. Rep., 815.

*Howard Martin,* Assistant Attorney-General; *W. C. Oliver,* District Attorney, and *E. T. Branch,* for the State.—On question of charge of court: Tanner v. State, 44 S. W. Rep., 489; Edens v. State, 55 S. W. Rep., 815; Sanches v. State, 55 S. W. Rep., 44; Robinson v. State, 63 S. W. Rep., 869; Powell v. State, 28 Texas Crim. App., 393; Hall v. State, 28 Texas Crim. App., 146; McCall v. State, 14 Texas Crim. App., 353; Crockett v. State, 40 Texas Crim. Rep., 173; Cockrell v. State, 32 Texas Crim. Rep., 585.

DAVIDSON, Presiding Judge.—This conviction was for burglary. The court charged the jury, as follows: "If defendant entered the

house on the invitation of one Will Shelton, for the purpose of only going in there to sleep, then he would not be guilty; and if you so find, find him not guilty." Several objections are urged to this charge, to wit: it shifted the burden of proof; it required the jury to believe that he entered the house on the invitation of Will Shelton, and for the purpose only of sleeping in there, before an acquittal could be obtained; it limits the acquittal to an affirmative belief of that fact; and that he could not be acquitted, unless he entered the house on the invitation of Shelton, and only for the purpose then of sleeping in said house. We believe these exceptions, under the facts, are well taken. Isaac Parsons was the cousin of Shelton and was the bar-tender of Elliott (the alleged owner). Parsons had invited· or requested appellant to open the saloon on the morning this burglary should have occurred. The breaking occurred about 2 o'clock at night. The request by the bar-tender of Shelton was to open the saloon that morning. The owner (Elliott) testified that he had been notified his house would be opened up on the night of the succeeding day after he was so notified; that on the night of the burglary he hid the key at a designated point, and that Parsons (his bar-tender and cousin of Shelton) knew where the key was placed. Voss (one of the four officers watching the house on the night of the alleged breaking) stated they had information four or five days previous that there would be an attempt to break this house. Shelton did not inform the officers, but told his cousin (Parsons, the bar-tender). Defendant testified that on the night of the burglary he was at the house of a woman named Roxy, and in this he is corroborated by Shelton and Roxy—when Shelton called for him. He got up and went with Shelton, ostensibly to a dance, but did not go to the dance. After starting for that purpose, at the instance of Shelton they changed their intention, and went to the saloon, for the purpose of sleeping in the saloon. His testimony on this point is, as follows: "And then I said, 'Let's go on home,' and I turned to go back, where Roxy was, and he said, 'No, let's go down to the saloon and sleep; that is where I sleep.' I said, 'Well,' and when we went on down to Harvey's saloon, and went on back to the back door (like this is the door, right here) Will Shelton got the key, he had the key. I never had the key in my hand; he opened the door, and I goes in to get some quilts and pillows to make us a pallet out in the saloon to sleep there, and just as I stopped to pick up the mattress inside, just the minute I stepped inside, I struck a match (like this) and was holding it up, and just at that time officer Voss came up right behind me with his gun right at my back. I says, 'What is the matter, Mr. Voss?' And he says, 'You will find out what is the matter.' That is the way I was arrested." The charge of the court required the evidence to show affirmatively that appellant went into the house on the invitation of Will Shelton, for the sole purpose of getting quilts on which to sleep. The converse of this, if he went in for any other purpose than to get the quilts, or if this was the only reason

for entering the house, he would not be guilty of burglary, was not given. This charge is most clearly wrong. The State must prove beyond a reasonable doubt that appellant entered the house only with the fraudulent intent of committing theft. If the fraudulent intent did not exist in his mind at the time he entered the house, the State would have no case. If he entered for the purpose of getting the quilts, and not for the purpose of stealing, the fraudulent intent was absent. His guilt or innocence in this case did not depend on the fact that he was going to get the quilts, or not get them. It was only a question that went to solve the intent of defendant. If the fraudulent intent did not exist, then he was not guilty. The evidence in regard to getting the quilts, or for the purpose of sleeping in the saloon (which he testified was the purpose) if true, would cut off absolutely any fraudulent intent in entering the saloon. The reverse of the law is charged, and the court should have instructed the jury, if he entered the house for any other than a fraudulent intent to steal then to acquit; and the reasonable doubt on this question should have been given, in his favor. This resolved the presumption of innocence and the reasonable doubt against appellant, and required of him to prove not only his innocence but overcome all reasonable doubt of his innocence.

There is another question made by the facts, which should have been submitted to the jury. If Elliott (the owner) was connected with the original design to break the house, and left the key at the designated point, for the purpose of enabling these parties to go into the house, then the parties entering the house had his authority and consent. This has been the well settled law in Texas, and was so decided in the well-considered case of Speiden v. State, 3 Texas' Crim. App., 156. Elliott testified that he was apprised the day before of the fact that the house would be entered. The officers had been notified of this fact (so Voss testifies) four or five days before. If Elliott informed the officers that his house would be broken, four or five days before it was broken, and the day before the burglary concocted the scheme that Parsons and Shelton should induce appellant to go into the house, then this would authorize an acquittal, on the ground that Elliott had consented. This does not militate against another well-settled proposition, to wit: that if the owner was not connected with the original design, but ascertaining that original purpose to break, afterwards joined in it sufficiently to bring about detection, his want of consent would not be obtained. These two lines of decisions are well recognized in this State. If Shelton had the authority, or defendant believed he had the authority to enter that house, from either Parsons or Elliott, then the fact that appellant went into the house on this occasion with Shelton, or with Shelton's consent, would relieve it of being a burglary case. Defendant testified that Shelton got the key and opened the house. The officers testify that Shelton was with him at the house at the time it was opened and so does Shelton and imme-

diately disappeared, after unlocking the door. They further testified that the key was in the door. Elliott was with the officers at the time.

For the reasons indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*