[Adams v. The State.]

# Adams *v.* The State.

## *Burglary.*

(Decided June 8, 1915.  68 South. 357.)

1. *Burglary; Indictment; Description of Building.*—Under section 6415, Code 1901, an indictment for burglary in having entered an office, describing it in the alternative as a structure or enclosure, is subject to demurrer unless it contained the averment that it was specially constructed or made for the keeping of goods or other valuable things.

2. *Same.*—An indictment charging that defendant with intent to steal, broke into and entered the shop, store, warehouse, or other building of S., in which goods, merchandise, books, things of value, were kept for sale or deposit, was good.

3. *Same; Ownership.*—The ownership of the premises entered must be definitely laid in an indictment for burglary; the rule being that the right of defendant to enter and break must be negatived.

4. *Same.*—In an indictment for burglary, the ownership of the premises should be laid, not in the holder of the legal title, but in him who had occupancy or possession when the offense was committed, unless the occupant was a mere servant, in which case it should be laid in the master.

5. *Same; Building.*—Under section 6415, Code 1907, each room or apartment of the state capitol may be a building within the designation of the statute.

6. *Same.*—Where the indictment does not aver that occupancy of the premises was in another than the defendant, the conclusion must necessarily arise from the fact therein stated that defendant was not the actual occupant of the building broken or entered, or there must be a positive negation of his right to break and enter the building.

7. *Criminal Law; Entrapment.*—Although the mere setting of a trap by the owner or occupant of property to catch a burglar cannot be set up as a defense to the prosecution if the crime was conceived by defendant and not suggested to him by the owner, yet, where the owner or occupant by himself or an agent persuades one to enter a building he thereby consents to the breaking so that his procurement of the crime is a complete defense to its prosecution; hence, where a State Medical Examiner, through an applicant for license to practice medicine, entrapped the defendant, an employee about the state capitol, to enter the office of such examiner and abstract therefrom the examination papers, the defendant was not guilty of burglary.

APPEAL from Montgomery City Court.

Heard before Hon. C. P. McINTYRE.

Kelly Adams was convicted of burglary, and he appeals. Reversed, and cause remanded.

Omitting formal charging part, the indictment is as follows:

(1) Kelly Adams, with intent to steal, broke into and entered the office of W. H. Sanders, a shop, store, warehouse, or other building, structure, or inclosure, in which goods, merchandise, or books, things of value were kept for sale or deposit.

(2) Kelly Adams, with intent to steal, broke into and entered the shop, store, warehouse, or other building of W. H. Sanders, in which goods, etc., as in first count.

(3) Kelly Adams, with intent to steal, broke into and entered the Alabama State Capitol, a building in which goods, merchandise, and books, things of value were kept for use, sale, or deposit, against the peace and dignity of the state of Alabama.

J. H. McNEAL, for appellant.

W. L. MARTIN, Attorney General, and J. P. MUDD, Assistant Attorney General, for the State.

BROWN, J.—The form prescribed for indictments for burglary is not broad enough to cover every offense denounced by the statute.—*Hawkins v. State*, 8 Ala. App. 234, 62 South. 974; *Ashmon v. State*, 9 Ala. App. 29, 63 South. 754.

The first count of the indictment in this case does not follow the form, but charges that the defendant, "with intent to steal, broke into and entered the office of W. H. Sanders, a shop, store, warehouse, or other building, *structure, or inclosure*, in which goods, merchandise, or books, things of value, were kept for use, sale or deposit," etc.

(1) To constitute burglary as denounced by section 6415 of the Code the building, structure, or inclosure· broken and entered must be within the statutory description, and, if it is a "structure or inclosure" other than a shop, store, warehouse, or building, to constitute the breaking and entry burglary, the "structure or inclosure" must have been specially constructed or made for the keeping of goods, wares, and merchandise, or valua· ble things. In the quoted averments of the first count the office of W. H. Sanders is described in one of the alternatives as "a structure," and in another as an "inclosure," and does not contain the averment stated above that is essential to bring the "structure or inclosure" within the statute, and the demurrer taking this point should have been sustained.—Code, § 6415; *Stone v. State,* 63 Ala. 115; *Smith v. State,* 140 Ala. 146, 37 South. 157; *Hawkins v. State, supra; Parker v. State,* 114 Ala. 690, 22 South. 791; *Thomas v. State,* 97 Ala. 3, 12 South. 409; *Williams v. State,* 7 Ala. App. 124, 62 South. 294; *Horton v. State,* 60 Ala. 72.

(2) The second count of the indictment follows the form, and the demurrers to this count were properly overruled.—*Lacy v. State, infra,* 68 South. 706; *Kelly v. State,* 72 Ala. 244; *Anderson ·v. State,* 70 Ala. 23, 45 Am. Rep. 72; *Thomas v. State, supra; Smith v. State, supra.*

(3, 4) The rule which requires the negation of the defendant's right to break and enter necessitates that the ownership of the property be definitely laid in the indictment.—*Emmonds v. State,* 87 Ala. 12, 6 South. 54; *Mazett v. State,* 11 Ala. App. 317, 66 South. 871. Burglary, like trespass, is an offense against the possession, and hence the test for the purpose of determining in whom the ownership of the premises should be laid in

an indictment is not the title, but the occupancy or pos-
session at the time the offense was committed. The own-
ership should be laid in the occupant at the time the of-
fense was committed, unless the occupant is a mere
servant.—*Thomas v. State, supra; Hale v. State,* 122
Ala. 85, 26 South. 236; 6 Cyc. 210 (IV, D, 11, c). Where
the building is occupied by a mere servant as the house
of the master and in the course of his master's employ-
ment, and not as a tenant, the ownership should be laid
in the master.—*Aldridge v. State,* 88 Ala. 113, 7 South.
4, 16 Am. St. Rep. 23; 6 Cyc. 211 (IV, D, 11 c [iii]).
The reason of the rule is to show that the accused is not
the rightful occupant, and therefore had no right to
break and enter, and to so identify the offense on the
record as to protect the accused from a second prosecu-
tion for the same offense.—*State v. Trapp,* 17 S. C. 467,
470, 43 Am. Rep. 614.

"Notwithstanding the complaints that have been made
against the strictness required in criminal proceedings,
as tending to facilitate the escape of offenders, all must
agree that to a certain extent it is indispensable; nor
will it be denied that it is necessary to the purposes of
justice that the party accused should be apprised of
the nature and identity of the offense for which he is
called to answer. He ought to be protected from sub-
sequent prosecutions for the same offense, and the court
ought to be enabled to judge from the record what the
offense is."—*State v. O'Donald,* 1 McCord (S. C.) 532,
10 Am. Dec. 691; *Miles v. State,* 94 Ala. 106, 11 South.
403; *Mazettt v. State, supra.*

For all that appears in the third count of the indict-
ment, the accused may have been the actual, if not the
legal, custodian of the building described as the "Ala-
bama State Capitol," or the apartment or room broken

[*Adams v. The State.*]

into and entered may have been in the actual custody of the accused.

To illustrate, the evidence in the record shows that Dr. Sanders is state health officer, occupying an apartment as an official of the health department in the State Capitol building. Suppose he had broken and entered his own office with the purpose and intent of surreptiously abstracting therefrom the papers that the accused, Adams, is alleged to have taken and for like purpose as the accused is alleged to have taken them; could it be contended for an instant that Dr. Sanders would be guilty of burglary under such circumstances? We think not. This clearly demonstrates that the third count of the indictment was bad, and the demurrers thereto should have been sustained.

(5) It cannot be doubted that each room or apartment of the State Capitol building may be a "building" within the meaning of the statute, and the subject of burglary, but the ownership of the property in such a prosecution should be laid in the actual occupant.—*Thomas v. State, supra;* 6 Cyc. 212 (IV, D, 11, c [iv]).

(6) From these observations it is clear that, where the form laid down for indictments for burglary is not followed, the conclusion should necessarily arise from the facts stated that the accused was not the actual occupant of the building broken or entered, or there should be a positive negation of his right to break and enter the building.

(7) The most serious question in the case is that presented by the refusal of the court to give the affirmative charge requested by the defendant. The undisputed proof shows that the building entered was the office of Dr. W. H. Sanders, state health officer, and chairman of the state board of medical examiners; that the wit-

ness Avery was an applicant before the board for license to practice medicine, and had submitted to examination in the usual way, by written question propounded by the board and answered in writing by the applicant, under the supervision of the officials of the department. The examination, when completed, was filed with Dr. Sanders, as the legal custodian, and kept by him in his office at the time of the alleged offense. The number assigned to Avery was 12. Previous to this time such papers had been removed from this office, and Dr. Sanders employed Avery and paid his expenses to entrap the suspect, and working to this end Avery approached accused, who was a servent in the State Capitol, and who performed certain duties with reference to keeping the office broken into in order, and for that purpose rightfully had a key thereto in his possession, and employed him to go into the office and secure the examination papers of Avery, numbered 12, and deliver them to Avery, so that Avery could copy and substitute his answers to said questions. Avery agreed to pay the accused $100 for securing these papers and replacing the substituted answers, and a part of this consideration was paid with money furnished by Dr. Sanders for this purpose. Dr. Sanders testified: "I made arrangements with Mr. Avery to have my office entered and No. 12 taken out of my office. Dr. Avery was No. 12 in the examination. He was to get out his paper. I arranged with him to ask the person who went into the office to get out No. 12 in two branches. * * * Of my personal knowledge, I did not know whether Dr. Avery went in there and got them out, or whether Kelly Adams went in there and got them out. We had marked paper No. 12. They were in my possession at the time I made the arrangements with Avery. A substitute paper was returned to

my office. The original is in our possession. I obtained the original from Dr. Avery. The substitute was put back in the box."

This evidence clearly shows that the act here made the basis of this prosecution was conceived by Dr. Sanders, and by his agent and under his instructions suggested to the accused. The rule as to cases of entrapment as to offenses against property is thus stated: "The fact that decoys were set, or traps laid, by means of which a person was detected in the perpetration of a crime, cannot be set up as a defense to the prosecution therefor, where the crime was conceived by the accused, and not suggested by the prosecuting witness or those acting for him duly authorized in the premises."—1 Wharton, Criminal Law (11th Ed.) § 389.

Referring to the above-quoted section, this author further says: "The law in relation to entrapment in crime has already been fully discussed, and the principles there stated apply in a prosecution for burglary the same as in prosecutions for other crime [against property]. The fact that the owner of a building having knowledge of a contemplated burglary therein remains silent and presumably permitted entry into the building for the purpose of arresting the intruder does not constitute a consent to the act, and will not furnish a defense to the prosecution therefor, for the reason that it in no wise affects the guilt of the accused. * * * Owner persuading a person to enter building and take his property constitutes a consent to such entry and taking, and for that reason is a complete defense in a prosecution for the act charged as burglary."—11 Wharton, Criminal Law, § 1043; *Allen v. State,* 40 Ala. 334, 91 Am. Dec. 477, and note, page 482; *People v. McCord,* 76 Mich. 200, 42 N. W. 1106; *Roberts v. Territory,* 8 Okl. 326, 57 Pac. 840.

And the same rule applies if the occupant of the building suggests and induces the act, through his agent.— 6 Cyc. 181 (II, B, 4, b); *Allen v. State, supra; Love v. People*, 160 Ill. 501, 43 N. E. 710, 32 L. R. A. 139; *Strait v. State,* 77 Miss. 693, 27 South. 617; *Bird v. State*, 49 Tex. Cr. R. 96, 90 S. W. 651, 122 Am. St. Rep. 803; *Connor v. State,* 18 Colo. 373, 33 Pac. 159, 25 L. R. A. 341, 36 Am. St. Rep. 295.

On the evidence shown by this record, the defendant was entitled to the affirmative charge, and the court erred in its refusal.

For the errors pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.