189 So.2d 576

Leamon MILLER

v.

STATE.

4 Div. 517.

Court of Appeals of Alabama.

March 15, 1966.

Rehearing Denied April 5, 1966.

288

Alice L. Anderson, Enterprise, for appellant.

Richmond M. Flowers, Atty. Gen., and W. Mark Anderson, III, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal was submitted March 25, 1965.

On an indictment[1] therefor, a petty jury found Miller guilty of second degree burglary.

The trial judge, after adjudication and allocution, sentenced him to five years in the penitentiary. Miller's counsel noted an appeal. Thereafter, another attorney filed a motion for new trial in the circuit court. This was denied.

We review both judgments. Code 1940, T. 15, §§ 368 and 389.

---

1. " * * * Leamon Miller did with intent to steal, break into and enter a shop, store or warehouse, in the possession of Vernon Dillard, known as Dillard Jewelry Company, which building was specially constructed or made to keep goods, wares, merchandise, things of value, in which goods, wares and merchandise, things of value were kept for use, sale, or deposit, against the peace and dignity of the State of Alabama."

## I.

The tendency of the prosecution's proof was:

One night in November, 1962, some one broke into the jewelry shop of Mr. Vernon Dillard in Samson, Alabama.

Mr. Dillard, on taking stock after the breaking and entry, missed a number of Bulova wrist watches. At least one of these watches was traced to Miller's possession a short time afterwards.

A policeman who found the front door of Dillard's store open testified in part:

"Q. Do you know Leamon Miller?

"A. Yes, sir. I know him.

"Q. In your judgment was that Leamon that run out that back door?

"A. It fitted his description.

"Q. It fitted his description?

"A. Yes.

"MR. KELLY: We object and move to exclude on the grounds there is no identification, it just fitted his description; he is not positive.

"COURT: Overruled.

"MR. KELLY: We reserve an exception.

"Q. Did you see Leamon Miller later that night?

"A. No, sir. As the car pulled off I jumped in the police car and tried to intercept him. It was a Ford and my car wasn't good as that one.

"Q. Was that the same car you had seen Leamon Miller on previously that night?

"A. Yes, sir. It was a black 57 Ford with red wheels; the onlyst one that I had seen in town during the night.

"Q. That is the one you saw him on previously?

"A. That is the one that pulled out from back of the store."

## II.

Identity of one seen at one time and one seen later is perforce not perfectly precise. Particularly, at night a fleeing man is often perceived in a glimpse.

Yet, comparison between the known and the supposed is a relative process. All the elements of the viewer's perception, the object's familiarity and the circumstantial setting are brought into question.

■ Hence, after a witness has testified that he has previously seen a man, it is generally permissible to ask his opinion or judgment as to whether or not a man he saw later was the same person. Williams v. State, 149 Ala. 4, 43 So. 720.

The trial judge may, if the acquaintance seems scant, accede to opposing counsel's motion for examination on voir dire. Certainly, in any case, the adversary may cross examine. See generally, 32 C.J.S. Evidence § 546(24).

■ Here the policeman's testimony sufficed to support the verdict on the issue of Miller's being seen at the store.

## III.

■ The possession of goods recently stolen in burglary affords a logical inference that the possessor—without a satisfactory explanation—was the burglar.

In Swoope v. State, 19 Ala.App. 254, 96 So. 728, we find:

"It is true that the averments in the indictment did not describe such domestic goods among the designated articles of merchandise stolen, but this testimony was admissible in order to shed light upon the questions involved, and, although not described in the indictment the fact that this defendant was found to be in possession of these recently stolen goods was a

circumstance tending to shed light upon the issues involved."

■ We consider there was sufficient evidence from not only (1) the officer's testimony of the appearance of the fleeing culprit but also (2) Miller's possession of part of the loot to support the verdict.

## IV.

We are cited to Danner v. State, 54 Ala. 127, to illustrate a defect in the indictment.

Until the adoption of the 1940 Code, no separate form appeared for a charge of second degree burglary. See Editor's note T. 15, § 259, Forms 29 and 32. Second degree burglary is the noncapital residue of the former statutory crime which Act No. 100, June 6, 1935, divided into two degrees.

The indictment of instant concern uses "things of value." This expression is a relic of Form 27, "burglary," in § 4556 of the 1923 Code. The recommended language in Form 32, T. 15, 1940 Code, is "or other valuable thing (*describing* it)." (Italics added.)

■ However, since no demurrer was interposed and since no ground of the motion for new trial raised the point, we consider there was no error since there was proof of all the essential elements of the statutory offense. Code 1940, T. 14, § 86.

## V.

That the expression "things of value" was used as a synonym for the statutory term "goods, wares, merchandise" rather than as equivalent to "or other valuable thing" is not fatal here. The constitutional requirement (Const.1901, § 6) that the accused be made aware of the nature and cause of the charge against him has been met.

This conclusion we rest on the purpose as well as the letter of the statute.

Common law burglary mainly punished nocturnal breach of another's dwelling.

Now, however, we have in § 86, supra, an additional felony of (1) breaking and (2) entering with (3) larcenous or felonious intent into (4) any one of three categories of buildings.

These three classes are: (a) an uninhabited (occupants temporarily away) dwelling house; (b) any building or structure or enclosure in a curtilage; or (c) a shop, store, warehouse, or specially constructed depository structure or enclosure, if therein at the time "any goods, wares, merchandise or other valuable thing is kept for use, sale, or deposit."

To set up a penal deterrence in favor of buildings which are not merely empty, the third category of buildings, (c) above, has appended the qualification of keeping therein for use, sale or deposit of chattels or "things." Crawford v. State, 44 Ala. 382. See also Ashmon v. State, 9 Ala.App. 29, 63 So. 754; Diggs v. State, 20 Ala.App. 213, 101 So. 357.

Mr. Justice Harwood, while on this court, illustrated his opinion in Evans v. State, 34 Ala.App. 534, 41 So.2d 615, with pertinent and persuasive obiter dicta:

"* * * a building, structure, etc., unless shown by an averment to that effect may reasonably be presumed to be empty, thereby affording no reasonable or satisfactory basis on which to found any larcenous or other felonious intent by reason of entry thereinto.

\* \* \* \* \* \*

"Burglary in the second degree, like trespass is an offense against possession, and hence the test for determining in whom ownership of the burglarized premises should be laid in an indictment for this offense is not ownership in the sense of legal title, but ownership in the sense of right of occupancy or possession. The ownership in such indictments is therefore properly laid in the occupant at the time the offense was committed, unless the occupant is a mere servant. Adams v. State, 13 Ala.App. 330, 69 So.

357. Precise accuracy in alleging the ownership of the house, not being an element of the crime of burglary in the second degree, is not required, and reference to ownership is only to increase the accuracy of the identity of the building allegedly burglarized. * * * "

As light on the meaning of "things of value," the opinion says:

"Nor do we consider count two defective because it omitted to describe the goods, wares, and merchandise mentioned therein as things of value. The words 'goods, wares, and merchandise' in and of themselves import value. Danner v. State, 54 Ala. 127, 25 Am.Rep. 662."

Syntactical analysis of the indictment has the phrase "things of value" used as an adjective modifier in apposition with and here referring to the nearest preceding antecedent noun, i. e., "merchandise." McCormick v. State, 141 Ala. 75, 37 So. 377; Green v. State, 15 Ala.App. 579, 74 So. 399.

■ Value[2] is the worth of an object either for consumption or for capital, as in the process of producing other goods. In commercial law it connotes consideration. Since the term "merchandise" evoked an image of buying and selling, its employment in pleading is not antagonistic to the term "things of value."

We quote from Cheatwood v. State, 22 Ala.App. 165, 113 So. 482:

" * * * There was no demurrer to the indictment. As to the contents of the building, this indictment is the same as in the case of McCormick v. State, 141 Ala. 75, 37 So. 377, where it was held that the words 'things of value' were descriptive of watches (cigarettes here). It was further held that, as to the goods or merchandise, it was not necessary to either aver or prove value. And in Henderson v. State, 70 Ala. 23, 45 Am.

Rep. 72, it is held that, where the indictment describes the specific class of articles mentioned in the statute as kept in the building for use, sale, or deposit— as, for example, either goods or merchandise—the law conclusively presumes that they are of value, and no averment need be made in the indictment to this effect. * * * "

The prosecution did not expressly extract from Mr. Dillard any statement as to what, if anything, was kept in his store at the time it was broken and entered. However, we conclude from the following excerpts that the store did—undisputedly— contain "merchandise."

"Q. Did you miss any merchandise upon your inventory after the burglary?

"A. Yes.

"Q. What all did you miss?

"A. Watches, new ones and used watches.

"Q. New watches? Any old watches?

"A. Yes, sir.

"Q. What type watches is that?

"A. Bulova watches, new ones.

*    *    *    *    *    *

"Q. Mr. Dillard, you have testified about State's Exhibit No. 2, a ladies wrist watch. I ask you to examine it. Is that a watch you bought from Mr. Childs in November of 1962, from Geneva?

"A. Yes.

"Q. Did you buy that watch from him?

"A. Or one similar to it now, which he proved this is the only one like it he had.

"Q. The only one like that, that you bought from him?

"A. The same number.

2.   See, generally, Emmco Ins. Co. v. Howell, 275 Ala. 270, 154 So.2d 28.

"Q. Did you have that watch in stock on the day that you closed up before you were robbed?

"A. That is right.

"Q. Had you sold any of the watches that you bought from Mr. Childs?

"A. Not a one.

"Q. What other watches did you buy from Mr. * * * how many did you buy from him?

"A. Five at this time.

"Q. And you had not sold any of them on the afternoon when you closed before you was robbed that night?

"A. No.

"Q. How many watches were taken from you that night?

"A. About twelve new ones."

The judgment below is due to be

Affirmed.

