316 So.2d 704

**Donald Wayne SPEARS**

v.

**STATE.**

**7 Div. 356.**

Court of Criminal Appeals of Alabama.

July 29, 1975.

Richard B. Emerson, Anniston, for appellant.

William J. Baxley, Atty. Gen. and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

CLARK, Supernumerary Circuit Judge.

This is an appeal from a conviction of burglary in the second degree and a sentence of imprisonment in the penitentiary for two years.

The indictment follows substantially the pertinent language of Code of Alabama 1940, Title 14, Section 86, and Form 32 of Title 15, Section 259, in alleging that defendant "did, with intent to steal, break into and enter a shop, store, warehouse, or other building of . . . in which goods, wares, merchandise, or other valuable things were kept for use, sale, or deposit." It is to be noted that the language of the statutory law cited, both as to the substantive law and as to the prescribed form of indictment, is "or other valuable thing is kept for use, sale, or deposit" instead of "or other valuable things were kept for use, sale, or deposit."

458

Appellant does not contend, and we find that there is no basis for a contention, that there was not ample evidence to show that there was a breaking and entering by defendant, with intent to steal, of a building located at 600 Noble Street in Anniston. It was an automobile sales place of business. It was locked about 6:30 P.M. There were between forty and fifty vehicles on the lot at the time. After locking the building, the manager went home, arriving at his home within twenty or thirty minutes, and was informed that someone was holding the phone for him. He went to the phone and was informed by a police officer that the "place of business" had been burglarized. He returned promptly. He noticed the plate glass window had been knocked out; that on the inside paper was thrown all over the floor and all the drawers were out; everthing was "ramshackled"; blood was on the glass inside; drops of blood were on the desk. The hood on a pickup truck in the lot was up, a 1956 Chevrolet had been tampered with and there was blood on both vehicles.

An officer of the police department of Anniston testified that he had received information that someone was prowling around a car at the particular place of business; in checking he noticed the front window of the building had been broken out; he started walking toward the building and saw the defendant standing inside of it. He then arrested defendant.

Defendant did not testify. His mother testified that she last saw defendant sometime between one and two P.M. on the day he was arrested; that he at the time was in an automobile and "he was completely out." She said that he had been taking medication, a doctor's prescription for pain in his eye. The record otherwise shows that he was blind in one eye.

At the close of the State's case, defendant moved to dismiss the charge on the ground that the State had failed to show the building broken into was one in which goods, wares, merchandise, or other valuable things were kept for use, sale, or deposit. The motion was overruled. A similar motion was made at the conclusion of all the evidence. Defendant's counsel ended his oral motion by stating: "More specifically, they failed to show that any valuable things were kept for use, sale or storage as required by the statute." This motion was also overruled. Defendant's counsel then submitted two written requests for the general affirmative charge in favor of defendant, which the court refused. After conviction defendant filed a motion for new trial, in which he reiterated his contention that there was no evidence to show that the building contained "other valuable things for use, sale, or deposit."

Appellant relies heavily upon *Gilmore v. State,* 99 Ala. 154, 13 So. 536, and *Harmon v. State,* 21 Ala.App. 377, 108 So. 643.

In *Gilmore,* speaking through Justice Head, the court stated:

"The indictment, which is for burglary of a dwelling house, contains the unnecessary averment that goods or clothi ESSARY AVERMENT THAT O R essary averment that goods or clothing —things of value—were kept in the house for use, sale or deposit. This averment is clearly one descriptive of the house, and, though unnecessary to be alleged, yet, being alleged, it became necessary for the state to prove it. There could be no conviction without such proof. Our adjudications are all one way on this point. *Lindsay v. State,* 19 Ala. 560; *Smith v. Causey,* 28 Ala. 655; *Johnson v. State,* 35 Ala. 363, and later cases to same effect. Under the evidence, the jury might have found that there was a bed and bureau in the house, kept for use, but there is no proof that they were of value. There being a total failure of proof of this averment, the defendant was entitled to the general affirmative charge which he requested."

In *Harmon, supra,* Presiding Judge Bricken stated:

"The indictment charged this appellant with the offense of burglary. It charged that he, 'with intent to steal, broke into and entered the storehouse of George Marcus, in which goods, merchandise, or clothing, things of value were kept·for use, sale or deposit,' etc.

"Necessary to a conviction in this case, under this indictment, it was incumbent upon the state to adduce evidence of a sufficient nature to satisfy the jury beyond a reasonable doubt of the guilt of the defendant, this after a consideration of all the evidence. To that extent it was necessary to prove (1) that the storehouse in question had been broken into and entered by this defendant; (2) that said storehouse was that of George Marcus; and (3) that in said storehouse, at that time, there were goods, merchandise, or clothing, things of value which were kept for sale, use, or deposit. Failure to prove all, or any, of these essential ingredients, under the required rule, would entitle the accused to an acquittal, and, as a result of such failure of proof, the court would be under the duty to direct a verdict for defendant if requested so to do in writing. Such written request was made, and the refusal of the court to give that charge is the question upon which this appeal is rested.

" . . . There was not, however, any effort or attempt upon the part of the state to prove the averment in the indictment No. 3, above stated. It does not appear that any inquiry along that line was made by the state. The court itself did propound, to state witness Emmett Thomas, the questions:

" 'Q. What sort of a store was this? Ans.: A meat market and grocery store.

" 'Q. Canned goods and stuff in there? Ans.: Yes, sir.'

"This was all the evidence on this subject. We regard the term 'stuff' here used as being meaningless. This leaves the evidence on this subject limited or confined to 'canned goods in there,' and this is insufficient to sustain the averment, viz.: 'In which goods, merchandise, or clothing, things of value were kept for use, sale, or deposit.' We are without authority to supply this patent omission in the evidence by assuming that 'canned goods in there' is equivalent to the necessary proof that in said store there were goods, merchandise, or clothing, things of value, and that they were there kept either for use, or for sale, or on deposit. As stated in *Gilmore v. State,* 99 Ala. 154, 13 So. 536, 'There could be no conviction without such proof.' *Diggs v. State,* 20 Ala.App. 213, 101 So. 357; *Porter v. State,* 17 Ala. App. 550, 86 So. 143.

"There was error in refusing the written charge requested."

*Gilmore* and *Harmon* were decided prior to the present statutory law pertaining to both burglary in the first degree and burglary in the second degree, now codified as Title 14, Sections 85 and 86, in accordance with Act No. 100, June 6, 1935, in which burglary was divided into two degrees. Pertinent comments are found in the Editor's Notes to these sections. Under Section 85 it is stated:

"Many of the cases construing this Section have been rendered obsolete by the Acts of 1935, P. 159, which divided the section into two parts, part one referring to burglary in the first degree (which now constitutes this entire section) and part two referring to burglary in the second degree (which now constitutes Section 86 of this title). . . . "

Under Section 86 it is stated:

"As stated in the editor's note to § 85 of this title, this section was formerly a part of the previous section. Many of the decisions construing § 85 will be

found applicable here and the editor's note [in] other annotations to that section should be read in connection with this section."

The changes in the law of burglary that were wrought by Act No. 100, General Acts 1935, the recodification by dividing one section into two separate sections by Code 1940 and the provision for a separate form for an indictment for second degree burglary in the 1940 Code were brought into clear focus by the opinion of Presiding Judge Cates in *Miller v. State,* 43 Ala. App. 287, 189 So.2d 576, cert. denied 280 Ala. 715, 189 So.2d 580, cert. denied, 87 S. Ct. 783, 385 U.S. 1043, 17 L.Ed.2d 687. In *Miller* it was noted that the indictment was defective in not following the form prescribed, but, since no demurrer was interposed and no ground of motion for new trial raised the point and there was proof of all the essential elements of the statutory offense, it was held that no prejudicial error had occurred. The indictment in *Miller* was different from the indictment in this case in that in *Miller* the words "things of value" were used synonymously with the words "goods, wares, merchandise." Thus the court came to the logical conclusion that "things of value" added nothing to the indictment, that the words "goods, wares, merchandise" in and of themselves import value, and that proof that the building contained "merchandise" constituted proof of the averments of the indictment and of the requirements of the statute as to the necessary contents of the building. There was direct evidence that "merchandise" was missed from the inventory after the burglary; a particular watch that had been in stock on the day the store was burglarized was identified and about twelve watches were taken that night.

The position of appellee in response to the contention of appellant is summarized in the assertion that testimony of the manager was that he had to "make certain all of the keys were up, that all the doors were locked and that everything was buttoned down," that it was obvious that the keys to which he was referring were keys to the automobiles left on the lot and that a key in and of itself has little value, but a key to an automobile, as a similar type motor vehicle, has a significant value since its holder would have access to such vehicle. Appellee asserts that such is deemed sufficient to afford affirmative proof that "items of value were kept in the office."

To some extent the position of appellee is supported by *State v. Pelkey,* 238 A.2d 611 (Me.1968).

In *Pelkey,* the indictment charged defendant with breaking and entering "a certain building in which valuable things were taken and then and there kept." The evidence showed that the building was a used-car business containing a desk with at least one drawer, in which drawer were three "piles" of automobile keys, that keys had been removed from the cars at the close of business and were deposited in the desk drawer; each key had attached to it a tag identifying the vehicle which the key fitted. The evidence also showed that appellant "after entry to the building, took one 'pile' of keys and used one key from the 'pile' taken to start and remove an automobile from the parking lot." The court, somewhat in line with the reasoning of counsel for appellee in the case now before us, stated that the evidence "suggests both that the key was worth something as incidental to the automobile, and had a desirable quality to this appellant.", and that the evidence was sufficient to afford a basis for a reasonable inference of value.

We have some difficulty in reconciling the conclusion in *State v. Pelkey, supra,* with the Alabama cases of *Gilmore* and *Harmon, supra.* It is not as clear to us that keys import value, as it is that goods, wares, and merchandise import value, as was held in *Miller v. State, supra.* Moreover, as close as the reasoning of the court in *State v. Pelkey* is to that of appellee herein, we think there are differences between the facts in that case and the facts in this case that tend to lead to a different

result. At any rate, we are not persuaded that there is any evidence in this case to support the material allegation of the indictment as to valuable things kept in the building.

It is to be noted that the statement of the manager of the building relied upon by appellee, "I have to make certain all the keys are up, that all the doors are locked, and everything is buttoned down." was not a direct statement that keys were kept in the building entered. The statement was not in answer to a question as to what was kept in the building. It was a tangential response to the question "Let me—what did you do in order to close up the place?" No further reference was made to keys other than in one other statement of the witness in which he stated, in referring to the motor vehicles at the time he left, "all of the hoods were down, all the doors were locked, and I had the keys because I don't leave them."

To some extent we are led to the conclusion we are reaching in this case by the fact that not once during the trial of the case, insofar as the record shows, did the State indicate in any way that it was relying upon car keys as sufficient contents of the building to meet the averments of the indictment and the requirements of the statute. Defendant's counsel pointedly and emphatically insisted that the evidence was insufficient, that there was no evidence of valuable contents. The only response made to that contention was the overruling of his motions, the refusal of his requested charges and the overruling of his motion for a new trial. It cannot be said that an explanation for a ruling of the trial court is necessary or that a party is required to answer to some extent every contention of an opponent, but the absolute silence of the State on this vital question in the case prevents it from being one in which it could be said that defendant had been apprised of the charge made against him, and of all of the material particulars thereof, and that he had as good an opportunity as the State to inquire, and that he should have

inquired, in detail whether the keys were kept in the building and as to the value of the keys. If the State was contending that the evidence with reference to the keys was sufficient to meet the requirements of the statute and the averments of the indictment, we find it difficult to understand its silence on the subject. If the defendant and his counsel had known that such was the contention of the State, the action of his appointed counsel could well have been different. If, indeed, the keys were kept in the building, the State, or its witness, well knew it and the fact should have been shown by direct and definite evidence that would have left nothing to the imagination.

It is also to be noted, as stated in *Miller v. State, supra,* that the recommended language in Form 32 T. 15, § 259, Code 1940, is, "or other valuable thing (*describing it*)" (Emphasis supplied.)

In holding that the judgment should be reversed and the cause remanded, we call attention, as we did in *Miller v. State, supra,* to Art. I, § 6, Constitution of Alabama 1901, which requires "that the accused be made aware of the nature and cause of the charge against him."

The judgment should be reversed and the cause remanded.

The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby

Reversed and remanded.

TYSON, HARRIS and BOOKOUT, JJ., and SIMMONS, Supernumerary Circuit Judge, concur.

DeCARLO, J., dissents.

CATES, P. J., not sitting.

## 462

DeCARLO, Judge (dissenting).

It is my judgment that this case should be affirmed.

From the following portions of the transcript, the evidence of the State shows things of value were deposited in the office of Winningham Auto Sales. The manager, Mr. Price, was asked:

"Q. What was the condition of the lot and the building when you returned?

"A. When I got there the sergeant was standing there and I noticed (sic) the plate glass window was knocked out. On the inside there was paper throwed all over the floor and all the *drawers* were out. Everything was ramshackled, and there was blood on the glass inside and drops of blood on the *desk*. Everything they touched looked like they might have been cut and bleeding." (Emphasis ours).

. . . . . .

"Q. Which one of these windows were broken out?

"A. The one on the left.

"Q. There is also another—the *air conditioner* is right here?

"A. That's right." (Emphasis ours).

This court in *Bates v. State,* 52 Ala.App. 257, 291 So.2d 351, reasoned:

"The jury may reasonably infer intent to steal from the presence of the accused in the store under circumstances showing a breaking and entering."

Applying this same rationale to the facts in the present case and noting that appellant was caught inside, it is my judgment a jury could infer from the totality of the evidence that the office of Winningham Auto Sales contained things of value.

I respectfully dissent.