INTER-OCEAN CASUALTY COMPANY *v.* WARFIELD.

Opinion delivered March 21, 1927.

1. INSURANCE—ACCIDENT POLICY—DWELLING HOUSE.—A quarter-boat used by government employees, while engaged in river improvement work, as a place of abode where they ate and slept, was a "dwelling house" within the meaning of a policy insuring an employee against loss of time from work by burning of a dwelling house.

2. INSURANCE—STATUTORY PENALTY—FOREIGN POLICY.—The penalty of 12 per cent. and attorney's fee should not be allowed in a judgment on a policy written and maturing outside the State.

Appeal from Chicot Circuit Court; *Turner Butler,* Judge; modified.

*William Kirten,* for appellant.

*W. W. Grubbs,* for appellee.

SMITH, J. Appellee resides in Chicot County, Arkansas, but for some years has been employed by the United States Government in its improvement work on the Mississippi River. Appellee and other men similarly employed lived, during the time of their employment, in a boat known as a quarter-boat, which was so equipped that the men ate and slept therein. As the name of the boat indicates, it was the living "quarters" of the men employed by the Government, and was their home during the period of their employment. The quarter-boat in question was stationed or anchored against the bank about eight miles north of Greenville, on the Mississippi side of the river.

Appellee read in a newspaper the advertisement of an accident and casualty company, having a local agent at Memphis, Tennessee, and he applied for a policy of insurance in the company. The application for the policy was transmitted by the local agent at Memphis to the home office of the company in Cincinnati, Ohio, where, on March 7, 1922, a policy was issued to appellee, it being mailed to him at his home address in Chicot County.

The policy insured the holder thereof against loss of time from work in the sum of $10 per week, for a period

not to exceed three months, resulting from injury received in the following manner, to-wit: "By the burning of a dwelling-house, hotel, theatre, office building, lodge room, club house, school building, store, church or barn, while the insured is therein, and provided the insured is therein at the beginning of the fire, and is burned by such fire, or suffocated by the smoke therefrom, but this clause shall not apply to nor cover the insured while acting as a watchman, policeman, or a volunteer or paid fireman."

On December 14, 1924, while the policy was in force, appellee was employed by the Government and was living in the quarter-boat, wherein he ate his meals and slept at night. The boat caught fire, and appellee was severely burned, and he brought suit to recover the indemnity provided for in the policy. He recovered judgment for the sum sued for, together with a 12 per cent. penalty and an attorney's fee. No question is made as to the amount recovered, except the penalty and attorney's fee, if the insurer is liable under the policy.

The liability of the insurer depends on the answer to the question whether the quarter-boat was a dwelling-house within the meaning of the policy.

In 19 C. J., 843, many definitions are given of the word "dwelling" or "dwelling-house," under that title, and many cases are cited holding that certain structures were or were not dwelling-houses. It is there said: "Many definitions have been given in adjudicated cases, and they are not entirely harmonious. The usual line of demarcation has been the use to which the building is devoted as a habitation for man; but the particular meaning intended to be expressed by it, when used in a given instance, may be rendered obvious by the context or attending circumstances; and usually resort must be had to those aids to interpretation to ascertain what is meant. * * * The term has been defined as one which is wholly or in part usually occupied by persons lodging therein at night, although other parts or the greater part may be occupied for an entirely different purpose; one

designed to be occupied as a place of abode by night as
well as by day, and which is constructed with a special
reference to that object; a house usually occupied by a
person lodging therein at night; a house or other edifice
usually occupied by persons lodging therein at night; any
house in which a person sleeps at night; any house where
any person habitually sleeps; a house in which one reg-
ularly and habitually sleeps in the night-time; any house
within which some person habitually sleeps or eats his
meals; a house intended for human habitation; any house
inhabited by man; an inhabited house; any house in which
people dwell; the house in which one dwells; a house or
structure in which people dwell; a house in which human
beings usually stay, lodge or reside; a house designed to
be occupied as a place of abode; *   *   * the building in
which one lives; a habitation for man, usually occupied
by some person lodging in it at night.''

In the case of *Davis* v. *The State*, 38 Ohio State
Reports, 505, it is said: ''Whether a building is or is
not a dwelling-house depends upon the use to which it is
put.  A barn may be converted into a dwelling-house, or
a dwelling-house into a barn, by a change of uses; so an
infirmary may or may not be a dwelling-house, depending
in no wise upon the question of its ownership or the pur-
poses of its original construction, but upon outside facts
and circumstances.''

In the case of *State of Iowa* v. *Mullen,* 35 Iowa
199, it was held that the words ''house of ill-fame,'' as
used in the statute punishing the keeping thereof as a
nuisance, included a boat on the Mississippi River when
used as a habitation for such purposes.  The court there
said:  ''It is suggested that the keeping of a boat or ves-
sel of ill-fame does not constitute the crime of nuisance as
defined in § 1411 of the Revision, which punishes the keep-
ing of *houses* of ill-fame for the purpose of prostitution
and lewdness.  But the point seems not to be relied upon
with any degree of confidence, and it needs but a passing
notice.  The evidence shows that the structure in ques-

tion is a flatboat with a cabin built on it, well finished and protected from the water; that men and women lived in it, and that the defendant and others ate and slept there. The following is Webster's definition of a house: 'In a *general sense,* a building or shed intended or used as a habitation or shelter for animals of any kind; but *appropriately,* a building or edifice for the habitation of man; a dwelling-place, mansion or abode for any of the human species. It may be any size, and composed of any materials whatever.' "

In the case of *Corey* v. *Schuster,* 62 N. W. 470, the Supreme Court of Nebraska said: "The second argument is that the building on the homestead premises was and is not a 'dwelling-house' within the meaning of the statute. We think this argument wholly without merit. The law does not contemplate, by the words 'dwelling-house,' any particular kind of house. It may be a 'brownstone front,' all of which is occupied for residence purposes, or it may be a building part of which is used for banking or business purposes, or it may be a tent of cloth. All that the law requires on the subject is that the homestead claimant and his family should reside in this habitation or dwelling-house, whatever be its character, on the premises claimed as a homestead."

We conclude therefore that the quarter-boat, being a place of abode for appellee and other employees during their employment, was, during that time, a dwelling-house within the meaning of the policy. The structure was designed and used for the purpose of abode, and its character as such was not destroyed by the fact that it was floated up or down the river as the work of the Government required.

Appellant insurance company insists that it was error to allow the insured the statutory penalty and attorney's fee, under § 6155, C. & M. Digest, and we concur in this view. Upon this point the case is ruled by the decision in the case of *Business Men's Accident Assn.* v. *Cowden,* 131 Ark. 419, 199 S. W. 108. In that case, as in

this, the policy sued on was written by a foreign insurance company, and the accident in each case upon which liability was predicated occurred in another State. It was there said: "* * * we hold that the statute (§ 6155, C. & M. Digest) was not intended to penalize a company on policies which were written and which matured in another State."

The judgment of the court below will therefore be modified by striking out the allowance of the penalty and attorney's fee, and, as modified, will be affirmed.