145 So. 832

## SOUTHERN BANK & TRUST CO. v. WHITED.

### 6 Div. 154.

Court of Appeals of Alabama.
Jan. 26, 1933.

310

H. H. Grooms and Coleman, Spain, Stewart & Davies, all of Birmingham, for appellant.

Wilkinsin, Burton & Wilkinson, of Birmingham, for appellee.

BRICKEN, P. J.

This is an action by W. T. Whited against the Southern Bank & Trust Company in the circuit court of Jefferson county, Ala., and resulted in a judgment for plaintiff.

The complaint as amended is as follows:

"Comes the plaintiff and amends his complaint by adding thereto the following count:

"Count Three.

"Plaintiff claims of the defendant the sum of One Hundred Fourteen & 36/100 Dollars, ($114.36) for that on to-wit the 3rd day of July, 1929, the Hotel Tutwiler Operating Company drew its check number 2718, in favor of the plaintiff, doing business as W. T. Whited Manufacturing Company, on defendant's bank for the aforesaid sum; that subsequent thereto plaintiff deposited said check in the Woodlawn Savings Bank for collection on to-wit, the 5th day of July, 1929, and that before the defendant paid said check, the plaintiff through his agent, the Tutwiler Hotel Operating Company notified the defendant that the said check had been deposited in the Woodlawn Savings Bank for collection, and further notified said bank to not pay the same to the Woodlawn Savings Bank, and further notified the said bank that said notice was for and on behalf of this plaintiff; and plaintiff further avers that notwithstanding said notice and instructions the said defendant negligently paid said check to the Woodlawn Savings Bank, and as a proximate result of said negligence, plaintiff suffered said loss, to-wit, One Hundred Fourteen & 36/100 Dollars, ($114.36). Wherefore plaintiff sues."

It appears that on July 3, 1929, W. T. Whited received a check from the Hotel Tutwiler Operating Company, Inc., for $114.36 drawn on the Southern Bank & Trust Company of Birmingham, Ala. On July 5, 1929, about 1:50 p. m., Mr. Whited deposited this check in the Woodlawn Savings Bank at Birmingham, to his credit. He carried a checking account with that institution, and the check was deposited in regular course of business. On Saturday, July 6, 1929, the Woodlawn Savings Bank turned its affairs over to the superintendent of banks for liquidation. The evidence tends to show that the Woodlawn Bank was hopelessly insolvent at the time it turned its affairs over to the superin-

tendent of banks and had been insolvent for some time preceding that date.

Before the Woodlawn Bank failed, the First National Bank of Birmingham acted as a clearing house for the Woodlawn Savings Bank. When the Woodlawn Savings Bank turned its affairs over to the superintendent of banks for liquidation, said check was not delivered to the First National Bank, but some three or four days later a cash letter was made up by the state banking authorities in charge of the bank, and several checks, including the Whited check, were delivered to the First National Bank with the cash letter. On the morning of July 6, 1929, Mr. Whited learned that the Woodlawn Savings Bank had closed, and that its affairs had been turned over to the superintendent of banks. He immediately contacted the Hotel Tutwiler Operating Company and requested them, through their auditor, to stop payment on the check. The auditor called the Southern Bank & Trust Company, and notified it to stop payment on the check, and confirmed this notice by a letter mailed on July 6, 1929, which was received by the appellant some days before the check was actually paid on July 9, 1929.

When the appellant was placed in a position where it knew that the check drawn by its customer, the Hotel Tutwiler Operating Company, to the order of Whited was in the hands of a bank that was insolvent at the time that bank acquired the check for collection, and was notified by its customer for the benefit of the payee of the check not to pay the check, we are of the opinion that appellant owed the appellee the legal duty not to pay the check. The drawer of an uncertified check may stop payment on it at any time prior to payment. 7 Corpus Juris, 701, § 429, and authorities noted.

The drawer and payee may be said to be mutually interested in a check after delivery to the payee. No good reason appears why the drawer of a check should not act for the payee, when requested by the payee, in protecting his interest in the check. The bank's duty not to pay when authority to pay is revoked by drawer arises from their contractual relation. Its duty not to pay when notified by the drawer for the benefit of the payee is simply the duty that everybody owes to everybody else; that is, the duty not to knowingly injure another.

If the bank pays one of its customers' checks, after notice not so to do, it is appropriating the customer's money for a purpose not authorized by the customer. When the customer, for the benefit of the payee of the check, notifies the bank not to pay it, and the bank notwithstanding such notice pays the check, it may be said to have used the money for purposes other than indicated by the customer, and to that extent to put it beyond the reach of the payee of the check to whom the customer wanted the money to go under the peculiar circumstances in the case.

No attempt was made to excuse the disregard of the notice not to pay that was given appellant. The appellant must be regarded as the author of its own misfortune.

What we have said is sufficient to indicate that our opinion is the judgment appealed from should stand affirmed. It is unnecessary to treat each assignment of error separately. The case was tried before the court without a jury. There is no substantial dispute about the material facts. No error injurious to the appellant is shown by the record. The judgment appealed from is affirmed.

Affirmed.