NATIONAL OLD LINE INSURANCE COMPANY *v.* RUSSELL.

4-3298

Opinion delivered January 22, 1934.

*Beloit Taylor,* for appellant.

*Barber & Henry* and *M. F. Elms,* for appellee.

SMITH, J. Appellee filed a complaint in the circuit court of Pulaski County against appellant insurance company, hereinafter referred to as the company, which contained the following allegations: The company issued to appellee a life insurance policy, which had been continued in force by the payment of annual premiums until it had a cash surrender value of $603.65, and appellee made application to the company for the payment to him of this sum. Appellee surrendered his policy pursuant to this application, and, on February 20, 1933, the company drew its check on the Union Trust Company, of Little Rock, payable to appellee, for the sum of $603.65, the full cash surrender value. The check was delivered, at appellee's request, to his representative, who immediately forwarded it to appellee at Stuttgart, where it was received by appellee on February 22, 1933. This being a bank holiday, the banks of the city of Stuttgart were closed on that day on that account. Appellee resides in the country fifteen miles distant from Stuttgart, and for that reason induced one of the tellers of the First State Bank of Stuttgart to accept said check to be deposited on the following day, to obviate the necessity of returning to Stuttgart to make the deposit. The Stuttgart bank closed or failed to open its doors on the 23d, and was immediately taken in charge by the State Bank Commissioner for liquidation.

The plaintiff thereupon, and on February 23d, communicated with the defendant company by wire and by mail and requested that it stop payment on said check. This demand was complied with, and the company gave

the drawee bank notice on February 23d to stop payment of the check, ''and payment on said check was stopped and same returned on February 25, 1933, through banking channels, and received several days thereafter by the plaintiff, Mack Russell; that by the time the check had been returned to the plaintiff, the Union Trust Company, upon which said check was drawn, had, on February 28, 1933, gone on a restricted basis.''

In the letter confirming the telegram, which directed that payment be stopped, a request was made that the company issue another check ''in lieu of the original one, which said defendant company, in its reply to plaintiff dated February 27, 1933, agreed to do upon the delivery of the original check to it; that, before said original check could be delivered to the defendant, the bank on which it was drawn had gone on a restricted basis, and thereupon the defendant company refused to issue a new check or otherwise pay the amount due this plaintiff.''

It was further alleged that demand for payment had been made and refused, ''except that the defendant tendered in payment 52½ per cent. of the amount of the original check, which is the amount or percentage since released by the bank on the restricted account of the defendant, and further tendered an assignment on its restricted account in the Union Trust Company for a sum which represented 47½ per cent. of the original check, which was refused by the plaintiff.''

Judgment was prayed for $603.65, with interest, and the statutory penalty and attorney's fee.

The company filed a demurrer to this complaint, which was overruled, and, as the company elected to stand upon its demurrer, and declined to plead further, judgment was rendered for the full cash surrender value of the policy, and six per cent. interest thereon. Appellee moved the court to assess the statutory penalty of twelve per cent., and to allow a reasonable attorney's fee, which the court declined to do. The company has appealed from the judgment against it, and appellee has prayed a cross-appeal from the refusal to allow the penalty and attorney's fee.

It is earnestly insisted that the company fully discharged its obligation when it issued a valid check for the surrender value, which would, in due course, have been paid had it been presented for payment to the bank upon which it was drawn, and that the failure so to be paid arose out of the fact that appellee selected an insolvent agent to make the collection. However, the company agreed to and did stop payment of the check, so that it may not now be said that the check was tendered and accepted as final payment. Under the allegations of the complaint, the fact remains that the company gave a check, the payment of which was stopped at its direction, so that it has not paid the demand which it is under a contractual duty to discharge.

The case of *Southern Bank & Trust Co.* v. *Whited,* Ala. App. 145 So. 832, is cited by appellant company as authority for holding that the company discharged its obligation when it stopped payment of the check at appellee's request. But we think the case cited does not sustain that contention. The facts there were that payment was made of an uncertified check, like the one here involved, after the drawer, for the benefit of the payee, had notified the bank upon which the check was drawn not to make the payment. It was there held by the Court of Appeals of Alabama that the drawer of an uncertified check may stop payment on it at any time prior to payment, and that, when the bank is notified by the drawer, for the benefit of the payee, not to pay an uncertified check, the bank owed the payee the legal duty not to make payment.

We have no hesitancy in approving the law thus declared; but we find nothing in this opinion to support the contention that the company has, by stopping payment of the check, at the payee's request, discharged its duty as the drawer of the check. When the payment of this uncertified check was stopped before presentation and payment, it ceased to be, as was said, in effect, in the case cited, by the Court of Appeals of Alabama, an order for the payment of money, and it cannot therefore be held to be a payment or discharge of the company's obligation to appellee. Judgment was therefore properly

rendered for the amount of the unsatisfied obligation, with interest thereon.

We are also of the opinion that the court properly refused to render judgment for the statutory penalty and attorney's fee.

By the act of March 29, 1905 (Acts 1905, page 307), appearing as § 6155, Crawford & Moses' Digest, it is provided that, "In all cases where loss occurs, and the * * * life * * * insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of such loss, twelve per cent. damages upon the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of said loss."

This statute was held to be valid and constitutional in the case of *Arkansas Ins. Co.* v. *McManus,* 86 Ark. 115, 110 S. W. 797. There was a discussion in this opinion of the purpose of such legislation and the theory upon which it could be sustained. It was there said that the insurance companies, after a loss insured against occurs, have the insured at a great disadvantage, and are in position to inflict great damage by mere delay in payment of losses, and that it was therefore neither unjust nor unreasonable to inflict a penalty which will in some degree compensate for that injury where the resisted claim is finally adjudged to be just, and which also tends to deter the insurer from interposing unnecessary delay in settlement.

This statute has been enforced in many subsequent cases, but it has been frequently stated that, being a penal statute, it should, like all such statutes, be strictly construed. *Business Men's Acc. Ass'n of America* v. *Cowden,* 131 Ark. 419, 199 S. W. 108; *Inter-Ocean Casualty Co.* v. *Warfield,* 173 Ark. 287, 292 S. W. 129.

There has been no denial of liability; nor was there any refusal to pay. On the contrary, the obligation to pay the cash surrender value of the policy was recognized, and a prompt effort, in good faith, was made to discharge it. The real question here involved is, who shall sustain the loss arising out of the failure of the bank

which appellee selected as his agent to collect the check, and the subsequent partial suspension of payment by the drawee bank? We are of the opinion that it was not the purpose of the statute to impose a penalty in such a case, and the judgment in its entirety will therefore be affirmed.