16 So.2d 699

**REEVES v. STATE.**

**4 Div. 301.**

Supreme Court of Alabama.

Oct. 7, 1943.

Rehearing Denied Dec. 2, 1943.

As Modified on Further Rehearing

Feb. 3, 1944.

O. S. Lewis, of Dothan, for the petition.

Wm. N. McQueen, Acting Atty. Gen., and John J. Haynes, Asst. Atty. Gen., opposed.

On Rehearing.

BOULDIN, Justice.

On rehearing in this cause this court undertook to define the elements of burglary in the first degree, saying:

"Petitioner, on rehearing, requests this court to construe Title 14, § 85 of the Code, and define the elements of burglary in the first degree. For the guidance of trial courts, as well as the Court of Appeals, we have considered and now express our views on the subject.

"The present statute is a codification of General Acts of 1935, page 159. This act, original in form, classified the crime of burglary into burglary in the first degree and burglary in the second degree.

"Burglary in the first degree is defined in these words: 'Any person who, in the nighttime, with intent to steal or to commit a felony, breaks into and enters any inhabited dwelling house, or any other house or building, which is occupied by any person lodged therein is guilty of burglary in the first degree, * * *.'

"Punishment was fixed at death or imprisonment for not less than ten years.

"Punishment for burglary in the second degree (Title 14, § 86) was fixed at imprisonment for not exceeding ten years.

"Burglary in the first degree, being made a capital offense, evidences a purpose to make highly penal a limited class of burglaries.

"One distinctive element of the higher crime is burglary 'in the nighttime.' Another element is the occupancy of the dwelling by some person at the time, or occupancy of any other house or building at the time by some person lodged therein. We are of opinion it was the legislative purpose in creating this higher crime to limit it to burglaries in the nighttime tend-

ing to endanger the life of the occupant. Highly penal statutes of this kind are to be strictly construed.

■ "In codifying the statute, the same legislature prescribed the form of indictment for burglary in the first degree. This form 29, Title 15, § 259, p. 422, omitting certain parenthetical clauses for purposes of clarity, reads: 'A. B. did, in the nighttime, with intent to steal * * * break into and enter an inhabited dwelling' (of a named owner) 'which was occupied by C. D., a person lodged therein,' etc. This discloses a legislative construction in keeping with the view that the presence of an occupant at the time of the burglary is an element of the capital offense, to be averred in the indictment, giving the name of the occupant.

■ "It follows that when the evidence disclosed a variance touching the identity of the person occupying the dwelling at the time, a case was presented for the procedure followed by the trial court, namely, on defendant's declining to consent to an amendment, nol pros the pending case, and order defendant held for a new indictment as per statute."

The cause being restored to the rehearing docket for further consideration, we have given a fuller study and consideration of burglary in the first decree and burglary in the second degree.

We find the lawmakers, in revising and modifying the Act of 1935, Code 1940, Tit. 14, § 85 et seq., and prescribing the form of indictments for burglary in the first degree and burglary in the second degree, gave the matter very careful study, and did not simply bring forward the Act of 1935 without consideration and revision. Section 1 of the original act defining burglary in the first degree was codified without change. Section 2 of the Act was revised and in connection with such revision, forms of indictments were framed and put in the Code as legislative enactments defining the elements of burglary in the first degree and burglary in the second degree. Analyzing Section 2 of the original act and Section 86 of the Code, we find Section 2 of the original act begins with these words: "Any person who, in the daytime, with [the] intent to steal or commit a felony, breaks into and enters a dwelling house or any other house or building which is occupied by any person lodged therein." Section 86 modifies this part of the section by

writing in the word "inhabited" before "dwelling house," thus making it conform strictly to the same cases Section 85 made burglary in the first degree if committed in the nighttime. Section 2 of the original act then proceeds: "and any person who, either in the nighttime or daytime, with intent to steal or to commit a felony, breaks into or enters any building, structure or enclosure, within the curtledge [curtilage], of any dwelling house, though not forming a part thereof." It must be observed this portion of the original statute was omissive. It brought in buildings within the curtilage of a dwelling, but did not in terms include the dwelling itself. So when the codifiers came to this feature of the statute, they wrote it thus: "Or any person who either in the nighttime or daytime, with intent to steal or to commit a felony, breaks into and enters any *uninhabited dwelling house,* or any building, structure or enclosure, within the curtilage of any dwelling house." (Emphasis ours.) Note also the original act as published had the words "breaks into or enters" when burglary means, breaks into and enters. The codifiers changed it to read "breaks into and enters" and inserted the words "any uninhabited dwelling house" to supply the omission in the original act as published.

It does not seem far-fetched to say the lawmakers considered an inhabited dwelling house and an uninhabited dwelling house to cover all dwelling houses; and it seems equally clear that when we define an inhabited dwelling house within the statute to mean the same as stated in the form of indictment, that is to say, a dwelling house occupied on the occasion of the burglary by some person lodged therein in the nighttime, an *uninhabited dwelling house* would include all other dwellings and so would include a dwelling which is a habitation of human beings, but ' not occupied by any person lodged therein at the time of the burglary.

Turning to form 32, Title 15, § 259, the form of indictment framed by the same lawmakers for burglary in the second degree, it will be noted that one of the clauses referred to an intent to commit the crime of arson and in the very next form, 33, they proceeded to frame a form of indictment for one type of arson in the third degree. This discloses that the lawmakers were having in mind the statutes relating to arson codified in the same Title, 14, § 23 et seq. Turning to § 23 defining arson in the first degree, it will be seen that statute deals

with the protection of dwelling houses, but makes the wilful burning of a dwelling house merely a penitentiary offense "provided said arson shall not produce the death or maiming of any person, but, if the said arson shall produce the death or maiming of any person, the punishment shall be death or imprisonment in the penitentiary for life, at the discretion of the jury." So if burglary in the first degree includes a dwelling in which no person is lodged at the time, it results that our lawmakers, in revising these two statutes dealing with the protection of dwellings, made it a capital offense to feloniously break into and enter a dwelling not occupied by any person lodged therein at the time, but made it only a penitentiary offense to wilfully burn down such dwelling provided no person be maimed or killed by such arson. Such inconsistent intent on the part of the lawmakers in dealing with kindred statutes of this sort should not be attributed to the lawmakers unless clear and unequivocal language compels such construction.

In the early history of the state, we had a statute that made it a capital offense for a slave to burglarize a dwelling house in the nighttime. In codifying that statute in 1852, the codifiers added a section declaring that no building was to be a dwelling house within the meaning of that statute "unless some white person is in such house at the time the act is done." Code 1852, § 3309. This situation was dealt with in Ex parte Vincent, 26 Ala. 145, 62 Am.Dec. 714. The court there held that a dwelling house under the old statute would include the dwelling house generally occupied, although the occupants were all absent at the time of the burglary, and that the codifier, deeming that statute too harsh, inserted the amended section for the express purpose of limiting the capital felony to burglaries in the night where some white person was in the house.

The statutes of several states have been so framed as to make degrees of burglary, the higher offense being limited to cases where human life was endangered by nighttime burglary when an occupant is lodged therein, presumably asleep. See 5 Words and Phrases, Perm.Ed., page 959.

The first definition of burglary in the first degree in Words and Phrases reads: " 'Burglary in the first degree' consists of unlawful and intentional breaking and unlawful and intentional entry in nighttime into dwelling house presently occupied, with intent to commit felony. State v. Madden, 212 N.C. 56, 192 S.E. 859, 860." 5 Words and Phrases, Perm.Ed., page 959.

The North Carolina statute is more specific than ours. None of these statutes so far as we have discovered are in the language of our statute, but evidently they all intended the same end, to conserve human life and not property merely. At common law, burglary was regarded as an offense against the habitation. A dwelling house, of course, included at common law a house regularly occupied as a dwelling and it did not lose its character by the temporary absence of such occupant. See 12 C.J.S., Burglary, § 17, p. 678. The term "uninhabited dwelling house" is very difficult to define other than in the sense we have construed it. The dictionary definition of a "dwelling" per se is a "habitation." Webster's Unabridged Dictionary. "Dwell" as a verb means to abide, to abide as a permanent resident, etc. So the word "dwelling house" within itself imports a habitation or house where people dwell as a place of residence, although they may be temporarily absent. So it seems to us by inserting the word "uninhabited" as opposed to "inhabited" dwelling under § 85, the lawmakers had in mind a dwelling house not occupied by anyone at the time of the burglary. The expression "uninhabited dwelling" is sui juris and should be given some meaning not covered by the term "dwelling" itself. The idea that an uninhabited dwelling house means a vacant house not occupied at all as a place of residence is to extend the crime of burglary to vacant buildings merely because they may have been constructed for residence purposes or formerly occupied, but now vacant, a notion entirely out of keeping with the entire spirit and purpose of our statutes on burglary. Wilful injury to buildings is penalized as malicious injury. Code, Title 14, § 80.

We adhere to the original opinion. This opinion, as extended, is substituted therefor.

Application for rehearing overruled.

All the Justices concur.