41 So.2d 615

**EVANS v. STATE.**

**8 Div. 742.**

Court of Appeals of Alabama.

July 19, 1949.

Griffin, Ford, Caldwell & Ford, of Huntsville, for appellant.

A. A. Carmichael, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

The indictment against this appellant, omitting the formal parts, contained two counts, as follows:

"Count One: Hobert Evans and Pete Shavers, alias Pete Stevens, whose names are to the Grand Jury otherwise unknown, with intent to steal broke into and entered an uninhabited dwelling house owned by Willie Pope.

"Count Two: The Grand Jury of said Madison County further charges that before the finding of this indictment Hobert Evans and Pete Shavers, alias Pete Stevens, whose names are to the Grand Jury otherwise unknown, with intent to steal broke into and entered an uninhabited dwelling house owned by Willie Pope and in possession of said Willie Pope, where goods, wares, merchandise were kept for use, sale or deposit, against the peace and dignity of the State of Alabama."

A demurrer, containing numerous grounds, was filed to the indictment. In their final analysis these grounds set up that both counts are defective in that neith-

er count properly charges burglary in the second degree, nor does either count negative appellant's right to enter the house allegedly burglarized under some possible special legal interest that might be held by appellant.

The portions of Section 86, Title 14, Code of Alabama 1940, defining burglary in the second degree, which are pertinent to this case are as follows: "* * * or any person who either in the nighttime or daytime, with intent to steal or to commit a felony, breaks into and enters any uninhabited dwelling house, or any building, structure or enclosure, within the curtilage of any dwelling house, though not forming any part thereof * * * in which any goods, wares, merchandise or other valuable thing is kept for use, sale, or deposit * * *, is guilty of burglary in the second degree * * *."

Count one does not allege that the uninhabited dwelling house was one in which there were kept for use, sale, or deposit, goods, wares or merchandise. Otherwise it substantially follows the Code form of the indictment prescribed in this type of case, and so far as we can see, the material portions of the Section 86 denouncing the offense of burglary from an uninhabited dwelling house.

An indictment for burglary of a dwelling house need not allege that goods, wares, merchandise, or other valuable things were kept therein for use, etc., such words or phrases applying only to the buildings, structures, etc. named in the second clause of Section 86, supra. Porter v. State, 17 Ala.App. 550, 86 So. 143.

The reason for such rule is obvious. The very term dwelling house denotes that it was occupied, and used by some person as a home, though it may be inferred from the adjective "uninhabited" that the person living therein was temporarily absent at the time of the burglary. It follows naturally that a dwelling house must normally contain goods, etc. to facilitate its use as such. On the other hand, a building, structure, etc., unless shown by an averment to that effect may reasonably be presumed to be empty, thereby affording no reasonable or satisfactory basis on which to found any larcenous or other felonious intent by reason of entry thereinto.

Count two very clearly follows the prescribed Code form of indictment for burglary in the second degree, as well as the language of the Code section pertaining thereto. Parrish v. State, 30 Ala.App. 442, 7 So.2d 893; Adams v. State, 13 Ala.App. 330, 69 So. 357.

Count one describes the dwelling house entered as "owned by Willie Pope," and count two describes the house as "owned by Willie Pope and in possession of said Willie Pope."

Burglary in the second degree, like trespass is an offense against possession, and hence the test for determining in whom ownership of the burglarized premises should be laid in an indictment for this offense is not ownership in the sense of legal title, but ownership in the sense of right of occupancy or possession. The ownership in such indictments is therefore properly laid in the occupant at the time the offense was committed, unless the occupant is a mere servant. Adams v. State, 13 Ala.App. 330, 69 So. 357. Precise accuracy in alleging the ownership of the house, not being an element of the crime of burglary in the second degree, is not required, and reference to ownership is only to increase the accuracy of the identity of the building allegedly burglarized. The designations of the house as they appear in the two counts of this indictment are in our opinion sufficient, and negatived the existence of any special interest in appellant entitling him to lawfully enter therein. The indictment was sufficient in this respect. Anderson v. State, 48 Ala. 665, 17 Am.Rep. 36; Murray v. State, 48 Ala. 675.

Nor do we consider count two defective because it omitted to describe the goods, wares, and merchandise mentioned therein as things of value. The words "goods, wares, and merchandise" in and of themselves import value. Danner v. State, 54 Ala. 127, 25 Am.Rep. 662.

The verdict of the jury was a general verdict of guilty, and therefore referable to either count. It is our opinion however that the demurrer was properly overruled as to each count.

The evidence presented by the State tends to show that on a day in December, 1946, Willie Pope accompanied by his wife, and after locking the doors and closing the windows, left the house he had occupied for about 15 years and was absent therefrom from "dusky dark" to around 10 p. m. The house was in a rural section of Madison County, on land owned by Nolen Drake, Pope occupying the house as a tenant of Drake.

The next morning Pope asked his wife to bring him his shotgun. The gun could not be found in the place it was kept, "right up over the door." Pope then examined his house and found a door to the west room, which had been fastened with an iron latch on the inside was "broke open," the latch being knocked off. Further investigating by Pope revealed that in addition to his shotgun a pair of his slippers was missing as well as his hound dog which he had tied on the outside of his house before leaving the night before.

A day or so later the appellant was arrested while riding in a convertible coupe in Jackson County. Some three or four days prior to his arrest appellant had told the arresting officer, Mr. A. J. Knight, that the coupe was owned by him. Pope's shotgun was found lying on the space back of the seat. Appellant told Mr. Knight that he did not know why the gun was in the car.

Pope's dog was located in a field near a house occupied by an aunt of the appellant, which house was on the outskirts of Scottsboro, in Jackson County.

Appellant was brought from Jackson County to Madison County by Mr. T. R. Crutcher, then a deputy sheriff of Madison County. On this trip appellant told Mr. Crutcher he had bought the gun from a Negro in Madison.

Further evidence was introduced by the State tending to show that this appellant had worked at a saw mill, located in the vicinity of Pope's house, for a short time in October preceding the burglary in December.

The evidence presented by the defense was directed toward establishing an alibi by showing that appellant was in Chattanooga, Tennessee, at the time Pope's house was entered.

There was testimony by a Ruby Farmer and a Doug Corbitt to the effect that one Woodrow Law, who was not produced as a witness in the trial below, had attempted to sell a shotgun and a dog to Corbitt at about the time of the alleged burglary.

Testifying in his own behalf the appellant contended he had been in Chattanooga at the time of this offense.

He further testified that he had borrowed the automobile in which he was arrested from Woodrow Law, and did not know the shotgun was in it. He denied telling Mr. Crutcher that he had bought the gun from a Negro in Madison.

■ It is to be noted that the indictment avers that this appellant broke into and entered an uninhabited dwelling house, owned by Willie Pope and in possession of Willie Pope, and that the evidence shows that Willie Pope had lived in the house for some 15 years prior to the burglary, and continued to live therein afterwards. At first blush it would appear that a serious discrepancy between the allegata of the indictment and the probata produced at the trial may have thus resulted. Such result does not exist however in contemplation of law.

■ The house was properly designated in the indictment as an uninhabited house. As pointed out by Justice Bouldin in Reeves v. State, 245 Ala. 237, 16 So.2d 699, after he had reviewed the legislative history of our statutes pertaining to burglary both in the first degree, and in the second degree, an inhabited dwelling house within the meaning of the burglary statutes is a dwelling house occupied on the occasion of the burglary by some person lodged therein in the nighttime. An uninhabited dwelling house would include all other dwellings which are habitations, but not occupied at the time of the burglary. At common law burglary was regarded as an offense against the habitation. Our statute on burglary in the first degree, Section 85, Title 14, Code of Alabama 1940, that is breaking and entering an inhabited dwelling house in the nighttime with intent to commit a felony

538

therein, is intended to protect human life as well as property.

■ Burglary in the second degree, Section 86, Title 14, Code of Alabama 1940, is intended to protect property. "So the word 'dwelling house' within itself imports a habitation or house where people dwell as a place of residence, although they may be temporarily absent. So it seems to us by inserting the word 'uninhabited' as opposed to 'inhabited' dwelling under Section 85, the lawmakers had in mind a dwelling house not occupied by anyone at the time of the burglary. The expression 'uninhabited dwelling' is sui juris and should be given some meaning not covered by the term 'dwelling' itself. The idea that an uninhabited dwelling house means a vacant house not occupied at all as a place of residence is to extend the crime of burglary to vacant buildings merely because they may have been constructed for residence purposes or formerly occupied, but now vacant, a notion entirely out of keeping with the entire spirit and purpose of our statutes on burglary. Wilful injury to buildings is penalized as malicious injury. Code, Title 14, § 80." Reeves v. State, 245 Ala. 237, 16 So.2d 699, 702.

■ The evidence presented by the State tends to show that although Pope and his wife were temporarily absent from their home for a few hours, during which period the burglary occurred, yet the house was their home, and had been continuously occupied by them as such for a long number of years. Pope testified that he had household goods and his shotgun in the house, as would be natural. We think such evidence would fully justify the jury in finding that such articles were kept in the house for use. A contrary conclusion would in our opinion be a denial of common knowledge and common sense. Such inferential proof is necessary only to support the averment in count two, that in the house of Willie Pope were kept goods, etc., for use, etc.

The rulings of the trial court as to evidentiary matters were in our opinion patently correct in each instance, and discussion of these rulings would be a mere repetition of principles long settled by the decisions of this State. We therefore refrain from such discussion.

■ Some seven written charges requested by the appellant were refused. Some twenty-one charges so requested were given. In our opinion no error probably injurious to appellant's substantial rights resulted from the refusal of the seven charges above mentioned. They were either covered by the very able oral charge of the trial court, or by other charges given at appellant's request, or were properly refused as being affirmative in nature, or incorrect statements of the law involved.

■ The evidence submitted by the State, though circumstantial in nature, presented a well connected train of circumstances, cogent in character, and in our opinion of such probative quality as to fully justify and sustain the jury's finding of guilt based thereon.

This cause is therefore due to be affirmed, and it is so ordered.

Affirmed.

BRICKEN, P. J., not sitting.