44 So.2d 262

**MOORE v. STATE.**

5 Div. 288.

Court of Appeals of Alabama.

Jan. 17, 1950.

Walker & Walker, Opelika, for appellant.

A. A. Carmichael, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

CARR, Judge.

The indictment in this case is in two counts as follows:

"1. The Grand Jury of said County charge that before the finding of this indictment, Jimmy L. Moore, alias Pete Moore, did with intent to steal break into and enter the uninhabited dwelling house of M. M. Moreman;

"2. And the Grand Jury of said County further charge that before the finding of this indictment Jimmy L. Moore, alias Pete Moore, did with intent to steal break into and enter the camp house of M. M. Moreman, a building in which goods, wares, and household furniture, things of value, were kept for use, sale or deposit; against the peace and dignity of the State of Alabama."

Demurrers to each count were overruled.

■ Count 1 follows substantially the code form, and unquestionably it is sufficient. Evans v. State, 34 Ala.App. 534, 41 So.2d 615.

The affirmative charge was not requested in any form for the defendant.

The jury returned a general verdict of guilt.

■ In this state of the record the verdict is referable to a good count in the indictment, the allegations of which are supported by the evidence. Gleason v. State, 6 Ala.App. 49, 60 So. 518; Wiggins v. State, 244 Ala. 246, 12 So.2d 758; Dorgan v. State, 29 Ala.App. 362, 196 So. 160; Hancock v. State, 14 Ala.App. 91, 71 So. 973; Brush v. Rountree, 249 Ala. 567, 32 So.2d 246; Burrow v. State, 147 Ala. 114, 41 So. 987.

Our task here is to determine whether or not the evidence will warrant and sustain a conviction under Count 1 of the indictment.

We turn to a consideration of this question.

It appears without dispute in the evidence that Dr. M. M. Moreman had a residence in West Point, Georgia. There, with his family, he resided a major portion of the time. The doctor also owned and maintained a house which was located on the backwaters of the Chattahoochee River in Lee County, Alabama. This building is described in the evidence as follows:

"Dimensions are 40 x 30, composed of two bedrooms with connecting bath and shower and other bathroom facilities between, living room 18 x 18, kitchen 10 x 12, and a big front porch all screened and painted, and a house out in the yard with pump in it. I have three double beds, two double decker beds, two settees and about twenty-two chairs. I have an electric refrigerator and electric stove and all cooking utensils."

Dr. Moreman testified that, with his family and friends, he spent two days and one night of every week at this house.

The evidence is amply sufficient and potent to sustain the contention of the prosecution that the accused burglarized the above described building. There was no one actually lodged therein at the time. It was, also, an evidential conclusion that the owners had not abandoned the house in the sense that they did not expect to return and enjoy its occupancy as theretofore.

Our review in the matter of instant concern is narrowed to a determination of whether or not the building in question is a house of such character as to come within the class of an "uninhabited dwelling house" as described in Sec. 86, Title 14, Code 1940.

This statute treats of burglary of various kinds of buildings. The "uninhabited dwelling house" is one of those enumerated, and it is designated and distinguished as one of the class by name. It is clear that it stands apart in description from other buildings or structures which are also made the subject of burglary in the act.

Generally speaking, a dwelling house is a house which is occupied as a residence, as distinguished from a store, office, warehouse, shop, etc. Within the contemplation of the burglary statute it is said to be "uninhabited" if the occupants have closed the dwelling and have gone away for a time, with the intent and purpose of returning and again residing therein.

The duration of the absence is not controlling. It is the animo revertendi which fixes the status in this particular. Olds v. State, 19 Ala.App. 162, 95 So. 780; Schwabacher v. People, 165 Ill. 618, 46 N.E. 809, 812.

The latter case quotes an encyclopedic note: "A house is no less a dwelling house because at certain periods the occupier quits it, or quits it for a temporary purpose. * * * So if A. have two mansion houses, and is sometimes with his family in one and sometimes in the other, the breach of one of them in the absence of his family is burglary."

The Kentucky Court of Appeals has held that a building, having been designed for and used as a dwelling house, remains a dwelling house, though temporarily unoccupied, until converted to some other use. Thomas v. Com., 150 Ky. 374, 150 S.W. 376.

The authorities recognize that a person may have a residence at one place and actually occupy a dwelling house elsewhere. Donahue v. U. S., 9 Cir., 56 F.2d 94.

In the case of Lower Merion Tp. v. Gallup, 158 Pa. Super. 572, 46 A.2d 35, the court held that house trailers, mounted on boxes or jacks, and connected with electric lines and water systems and remaining within the township for more than thirty days, were "dwelling houses" within the regulations of the township sanitary code.

The Arkansas Supreme Court held that a boat which was anchored against a bank and used by government employees as a place for eating and sleeping while engaged in river improvements was a "dwelling house." The question was incident to an interpretation of a provision in a policy which insured an employee against injury by the burning of a "dwelling house." Inter-Ocean Casualty Co. v. Warfield, 173 Ark. 287, 292 S.W. 129.

In Gibbs v. State, 8 Ga.App. 107, 68 S.E. 742, it was held that a railroad car, in which the occupants lived, ate, and slept, and which was used exclusively for the pur-

pose of habitation, was a dwelling house so as to be the subject of burglary.

A crudely constructed log house, built for the use of woodchoppers while working near by, in which several persons were staying temporarily, sleeping and eating there, was held to be a "dwelling house" within the statute defining the crime of burglary in State v. Weber, 156 Mo. 257, 56 S.W. 893.

With respect to the character of the building involved, the facts in the case of State v. Bair, 112 W.Va. 655, 166 S.E. 369, 370, 85 A.L.R. 424, are strikingly analogous to those in the case at bar. We copy from the body of the opinion: "Whether the building alleged to have been burglarized was a dwelling house within the meaning of the statute on burglary presents our first query. The building is located in a rural community. One of the co-owners, Shott, testified that it was used by the owners and their families as a place of residence in vacation time and at week-ends, particularly in warm weather; that the building was completely furnished for occupancy, such furnishings including beds and bedding, chairs, tables, radio, victrola, heating stove, dishes, cook stove and kitchen utensils. Food stuffs also were usually kept in supply. The size of the structure does not appear from the record."

In response to the question there presented, the court observed: "Many cases discuss whether the several buildings therein described were, under the circumstances, dwelling houses within the meaning of the law of burglary. A building need not be regularly occupied as a place of habitation to render it a dwelling. Of course if the owner or occupier has quit the premises without intent to return, the building thereby ceases to be a dwelling, but it is otherwise if the absence be animo revertendi."

The court concluded: "So we conclude that the defendants' insistence that the building designated in the indictment as a dwelling house was not in fact such, at the time it was burglarized, is not well taken."

We do not think that it is necessary for us to make further comment or give any other illustrations from adjudicated cases.

We hold that the building described in the evidence was at the time of the alleged burglary an "uninhabited dwelling house" within the provisions and contemplations of the statute about which we are concerned; that Count 1 is a good count and the general verdict is referable thereto. We make no declarations of our view as to the sufficiency of Count 2 of the indictment.

The motion for a new trial raises the question that the verdict was contrary to the evidence. There is no merit in this position. The accused did not testify nor offer any evidence in his behalf. The proof for the prosecution is abundantly sufficient to sustain the verdict of the jury.

Another ground raised by the motion for a new trial is that the punishment fixed by the court is excessive. The sentence is for a term of two years and four months in the State penitentiary. The statute specifies that on conviction the imprisonment in the penitentiary shall be for not less than one year, nor more than ten years.

We will not attempt to analyze the holdings of the Supreme Court in the cases of Brown v. State, 109 Ala. 70, 20 So. 103, and Easley v. State, 246 Ala. 359, 20 So.2d 519. Clearly the case at bar is not comparable to either of these. It may be noted particularly that in the two cases just cited the Supreme Court was dealing with homicide cases in which the jury fixed the punishment.

It is indicated in the record and brief of counsel that the appellant was convicted at the same term of the court for burglary of another house. In brief it is stated: "The most striking difference between the two cases is the sentence. In No. 287 [Ala.App., 44 So.2d 789 [1]] the defendant was sentenced for only one year and one day, while in this case he was sentenced for a term of two years and four months, to begin at the expiration of the sentence in Case No. 287."

We see nothing strikingly strange or unusual about this. It is not rare when judges impose greater punishment on second offenders. In fact, the statute makes this de-

1. Post, p. 160.

mand for the violations of some of our criminal laws. In many of the states in the union the law requires that very severe punishment be imposed on those who violate the same penal laws more than one time.

In the case at bar it was within the court's discretion to fix the punishment within the limitations provided in the applicable statute. Assuming, but not deciding, that this discretion is subject to revision on review, we cannot say in this case that the punishment was excessive and that the trial judge abused his discretion in imposing it.

The questions we have omitted to discuss relate to elementary principles of law and do not require any special treatment.

The judgment of the court below is ordered affirmed.

Affirmed.