108 So.2d 184

Justice SIMMONS

v.

STATE.

4 Div. 386.

Court of Appeals of Alabama.

Jan. 6, 1959.

Lynn W. Jinks, Jr., Union Springs, for appellant.

John Patterson, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant stands convicted under an indictment charging burglary in the first degree in that he "did, in the nighttime, with intent to forcibly ravish a girl or woman, break and enter the inhabited dwelling house of James T. Johnson, which was occupied by Sara Nell Johnson and Mary Ann Johnson, persons lodged therein," etc.

The evidence presented by the State tends to show that Willis H. Jernigan lived on the Troy Highway in Bullock County. On the night of 30 November 1957, the appellant knocked on his door. Answering the

knock, Mr. Jernigan was asked by appellant the way to the highway. Jernigan pointed out a lighted filling station, and told the appellant if he went there he would hit the highway. He then went back and lay down. Jernigan had never before seen the appellant, and very shortly after appellant had left his house he went back to his door. As he reached his door he heard a girl screaming. As quick as he could get his shoes on he got in his car and drove toward the Johnson home, which was approximately 600 yards. As he approached the Johnson home the headlights of his automobile shone on it. As he reached the yard he saw the appellant leaving the yard.

At this time Spencer Hall arrived armed with a shotgun, and the appellant was taken into custody.

At this time the appellant had been drinking, but answered questions intelligently, "as to where he worked," and "all that," but would not say why he had entered the house.

Jernigan left the appellant with Spencer Hall and went to summon the police. He denied he had told the police to "come get a drunk man," but testified he told the police to "come get a man who broke in Johnson's house."

Mary Ann Johnson testified that about 8:00 P.M. on the night in question she answered a knock at the front door of her home. Then, according to Mary Ann:

"I went to the front door, and when I opened the wooden door, he was opening the screen door, and I tried to shut the wooden door, and when I did he pushed it back and I couldn't hold it and he started pushing me back toward the hall, .and I knew I couldn't hold the door and I ran out the back door to the next house.

"Q. Mary Ann, when you tried to close that door, what did he do?

"A. He was saying something, and got hold of the knob.

"Q. Did he push you against the wall?

"A. I started going backwards and I knew I couldn't hold the door and I ran out the back door."

The house to which Mary Ann ran was Spencer Hall's.

Mrs. Sara Nell Johnson, the mother of Mary Ann, testified that on the night in question she was in her home with her four children. Mary Ann walked to the front door, and in a few minutes she heard her screaming and running through the house. She left the bath room where she was bathing the younger children and met the appellant in the dining room. She started to run back, and fell over a child's table, spraining her ankle.

She then asked appellant to leave, and he replied he would leave when he got ready.

About this time car lights flashed through the window, and appellant turned and walked out of the house.

For the defense Officers Farmer and Norris testified that they arrested appellant "4 or 5 houses up" from Johnson's home on the night in question, after Mr. Jernigan had reported a drunk man.

At the time of his arrest he was drunk. Officer Farmer stated he would not say appellant was too drunk to know what he was doing.

Officer Norris testified that at times appellant seemed normal, and at other times appeared drunk after his arrest.

Officer Farmer testified he did not know the time of appellant's arrest, "it might have been between 9:00 and 10:00 P.M."

In his own behalf the appellant testified that when he got off work in Tuskegee he came to Union Springs. There he bought a pint of one hundred proof Vodka, which he began to drink. He caught a ride out to Richard Martin's home, and had "mighty

little" of the Vodka left when he arrived there around 5:00 P.M. He sat at Martin's watching television, and finished the remains of his bottle. He then decided to leave and start for his home. He did not know how far he had gotten toward his home as he developed "something like the blind staggers" and remembered nothing else until he was locked up.

In rebuttal Spencer Hall testified that on the night of 30 November 1957, he was in his home which is about 120 feet from the Johnson home. He heard a Johnson girl screaming, and she ran to his house, informing him on arrival "there is a negro in the house with my mother." He got his gun and went to the Johnson house. Mr. Jernigan arrived at the Johnson home just before he did, and when the appellant came down the steps Jernigan "got him by the arm."

Hall testified that the appellant at this time walked normally, and answered questions intelligently, except he would not say why he had entered the Johnson home.

In Hall's opinion the appellant was not drunk during the fifteen or twenty minutes he observed him.

The sole questions involved in this appeal are the action of the court in denying appellant's motion, made at the close of the State's case, to exclude the State's evidence, the refusal of appellant's requested written charges, affirmative in nature, and the denial of his motion for a new trial posited on the grounds of the insufficiency of the evidence.

For this reason we have set forth the evidence rather in detail, and perhaps tediously, in order to assure a further review if desired.

■ In this state the elements of burglary in the first degree are: 1. A breaking and entering, 2. in the nighttime, 3. of an inhabited dwelling house, or any other house or building occupied by any person lodged therein, 4. with intent to steal or to commit a felony.

■ At common law burglary was regarded as an offense against a habitation. Our statute is directed toward protection of the person as well as property. Reeves v. State, 245 Ala. 237, 16 So.2d 699.

■ The gravamen of the offense of burglary is the breaking into an inhabited dwelling with intent to steal or commit a felony, and it is not required that the intended act be consummated. Holland v. State, 247 Ala. 53, 22 So.2d 519.

■ We do not think it arguable but that the evidence shows that this appellant broke into the Johnson home in the nighttime. His act in opening the screen door, and in forcing the front door open sufficiently to enable him to enter, despite the efforts of Mary Ann to prevent such entry establishes this element of burglary. Cox v. State, 33 Ala.App. 395, 34 So.2d 179; Adair v. State, 19 Ala.App. 174, 95 So. 827.

■ The intent of the appellant in his forcible entry into the sanctity of the home was a question solely for the jury, to be ascertained by that body from a consideration of all the facts and attendant circumstances. Brazier v. State, 25 Ala.App. 422, 147 So. 688; Cox v. State, supra.

In this aspect the jury had before it undisputed evidence showing that a few moments before breaking into the Johnson home the appellant had appeared at the Jernigan home, and upon his knock being answered by Mr. Jernigan he inquired the direction to the highway, and was informed that if he went to a lighted filling station about a quarter of a mile distant, and which Mr. Jernigan pointed out to the appellant, he would "hit" the highway.

Instead, the appellant proceeded to the Johnson home, where, upon his knock being answered by a young girl, he forced his way into the home.

Despite the screams and evident fright of this young girl he entered the home, and upon the plea of Mrs. Johnson to leave stated he would leave when he got ready.

His departure came about only when car lights indicated the possible arrival of help.

Further, the appellant, when apprehended by Jernigan and Hall, refused to offer any explanation for his entry into the Johnson home.

As to the appellant's defense of drunkenness, the evidence without a doubt, presented a factual issue within the province of the jury to resolve. Certainly there was ample evidence from which the jury could reasonably conclude that this appellant was intoxicated to such degree as to render him incapable of forming the required intent.

We hold that the evidence was amply sufficient to support the verdict and judgment, and that the court did not err denying appellant's motion to exclude the State's evidence, nor in refusing his requested charges affirmative in nature, nor denying his motion for a new trial.

Affirmed.