CLARK, Supernumerary Circuit Judge.
Appellant was convicted of burglary in the second degree as charged in an indictment alleging, inter alia, that he, “with intent to steal, broke into and entered the dwelling house of Mike Tinker.” The court sentenced him to imprisonment in the penitentiary for a term of thirteen months, one month more than the minimum punishment provided by Code of Alabama 1940, Re-comp. 1958, Tit. 14, § 86.
The evidence is ample to support a finding that defendant, with intent to steal, broke into and entered two' houses adjacent to each other that were owned by Mike Tinker. The only serious question raised on appeal is whether either was a “dwelling house.”’
According to the evidence for the State, both buildings were broken into and entered by defendant and another about 5:00 . P.M. May 16, 1976, and plundered of valuable contents. One was a 20 X 20 ft. concrete block building, the other a 16 X 16 ft. • wooden building. Neither building was occupied at the time of the burglary. They were located on a lot fronting on Highway 98 at Wilmer, Mobile County, Alabama.
Mr. Tinker, the owner of the buildings and the lot upon which they were located, was in Texas at the time of the burglary. About sixteen years before the burglary he had built a concrete block house and had had the wooden house, as well as an outhouse, moved onto the lot. During this sixteen-year period he had worked as a mailman in Texas, but looked forward to his retirement and residence during retirement at Wilmer. Each of the houses had a bed in it. During the sixteen years he worked in Texas, Mr. Tinker would return periodically to Mobile County and would usually stay in one of the buildings and sleep there. On cross-examination, he testified:
“Q Mr. Tinker, you said ‘garage.’ And then you said that is your dwelling house. When did this become your dwelling house? Didn’t it become your dwelling house when you moved back to Wilmer from Texas in the summer of 1976? Isn’t that when you slept in the block building?
“A I slept in there before that.
“Q When did you sleep in the block building?
“A Well, when it was made.
“Q Sixteen years ago?
“A Yes.
“Q And then you slept in it again when you moved back to Wilmer from Texas?
“A No. Periodically I would sleep in there and out in the shed, too.
“Q Is there a bed there?
“A Yes.

“Q When was the last time you had slept in the , building prior to the summer of 1976?
“A Well, I was sleeping in there after it was made and periodically.
“Q When was the last time you slept in the block building prior to the summer of 1976?'
“A After the building was built and sometimes after that.
*29 “Q All right. You say you hadn’t been back in this building in almost two years, is that correct? Sometime in 1974; you came back to Wilmer, is that correct? And then you came again in the summer of 1976.
“A It was October that I was here in ’74.
“Q O.K. So we are talking about a year and a half, then. You hadn’t been there in a year and a half. When was the last time prior to that year and a half that you slept in the building?
“A When the building was built, I slept in it, and then several times after that.
“Q Did you sleep in the building each night?
“A No, not each night.
“Q Where did you stay the other nights?
“A Well, sometimes in the shed.
“Q Which one is the shed? Now, we’ve got block, wood and outhouse.
“A Wood.
“Q All right. Is there a bed in the wood house?
“A Yes.”
Although the evidence is rather vague and weak as to the number of times Mr. Tinker had used either house as a “dwelling house” during the sixteen years he worked in Texas, the evidence is practically conclusive to the effect that he constructed the block house to be used by him in the future as a garage, to which he planned to build a larger house in which to live, but that he considered the concrete block house and the wooden house as his home, his dwelling, when on a large number of occasions he returned to Mobile County from Texas. There was no plumbing in either house, but there was electric current, and the contents of the block house included a stove, two refrigerators and “a lot of clothes.” The following is a part of his testimony:
“Q Had all this stuff been in there quite some time? A number of years perhaps?
“A Well, not all at one time. Every-time, I came on vacation, I was planning to, when I retired that I would have the materials handy to build another house, or something like that.
“Q This was going to be the garage portion of your house?
“A Yes. I was using it as a house, like my father would do. He would always build a garage first, we would live in it, and then when he had the time and money, he’d build a house.”
The wooden building is referred to at times in the evidence as a “shed,” but, according to the evidence as a whole, it is clear that it was fully inclosed prior to its entry, that immediately thereafter it was found that “the door on the wood building had been knocked halfway down, it was just dangling on one hinge at that time.”
We do not find any reported case in Alabama with sufficient likeness to the facts in this case to enable us to conclude the question by citation of such case without comment, but we are greatly aided by what has been held and stated in Reeves v. State, 245 Ala. 237, 16 So.2d 699 (1943) and Moore v. State, 35 Ala.App. 95, 44 So.2d 262 (1950).
In Reeves, it is stated:
“. . . The dictionary definition of a ‘dwelling’ per se is a ‘habitation.’ Webster’s Unabridged Dictionary. ‘Dwell’ as a verb means to abide, to abide as a permanent resident, etc. So the word ‘dwelling house’ within itself imports a habitation or house where people dwell as a place of residence, although they may be temporarily absent. So it seems to us by inserting the word ‘uninhabited’ as opposed to ‘inhabited’ dwelling under § 85, the lawmakers had in mind a dwelling house not occupied by anyone at the time of the burglary. The expression ‘uninhabited dwelling’ is sui juris [sic] and should be given some meaning not covered by the term ‘dwelling’ itself. The idea that an uninhabited dwelling house means a vacant house not occupied at all as a place of residence is to extend the crime of burglary to vacant buildings merely because they may have been constructed for residence purposes or formerly occupied, but now vacant, a notion entirely out of keeping with the entire spirit and purpose of our statutes on bur *30 glary. Wilful injury to buildings is penalized as malicious injury. Code, Title 14, § 80.” 245 Ala. at 240, 16 So.2d at 702.
In Moore v. State, supra, the court said:
“Generally speaking, a dwelling house is a house which is occupied as a residence, as distinguished from a store, office, warehouse, shop, etc. Within the contemplation of the burglary statute it is said to be ‘uninhabited’ if the occupants have closed the dwelling and have gone away for a time, with the intent and purpose of returning and again residing therein.
“The duration of the absence is not controlling. It is the animo revertendi which fixes the status in this particular. Olds v. State, 19 Ala.App. 162, 95 So. 780; Schwabacher v. People, 165 Ill. 618, 46 N.E. 809, 812.”
We cannot say that the status of either house as a dwelling was lost by Mr. Tinker’s failure to live there for a period of a year and a half prior to the burglary. No definite period of time, however long, is the criterion. The intention to return or not to return is determinative. Nor can we say that the fact that the houses were used largely for storage purposes deprives either of them of its status as a dwelling. The fact that they were so used emphasizes Mr. Tinker’s nostalgia and the constancy of his desire to return .to the salubrious shores of Mobile Bay to spend his retirement years. We find no error in the record prejudicial to appellant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by the Honorable LEIGH M. CLARK, a retired Circuit Judge, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
The judgment below is hereby
AFFIRMED.
All the Judges concur.